Harvey Eugene BLANTON, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

Court of Appeals of Kentucky.

June 21, 1968.

Stuart L. Lyon, David Kaplan, Hubert H. Hevey, Jr., Louisville, for appellant.

John B. Breckinridge, Atty. Gen., George F. Rabe, Asst. Atty. Gen., Frankfort, for appellee.

WADDILL, Commissioner.

Appellant, twenty-three years of age, was convicted of the crime of rape and sentenced to serve fifteen years in the state penitentiary. KRS 435.090. The twelve-year-old victim of the crime testified that appellant forcibly made her submit to sexual intercourse with him on December 25, 1966, and that the crime was committed in the basement of a house located at 654 38th Street in Louisville, which was then occupied by a person who was described as a friend of both the appellant and the victim.

On this appeal it is contended that appellant was entitled to have the jury instructed on the lesser offense of detaining a female against her will with intent to have carnal knowledge. KRS 435.110. This contention is based on appellant's view that the medical testimony showed there was no penetration of the victim, an essential element of rape.

In summary, the victim testified that while a Christmas party was in progress, appellant offered to show her the basement, took her down there, pulled her into a small room, threatened to strike her, removed her panties and forcibly had sexual intercourse with her. She specifically stated there had been penetration in accomplishing the act of sexual intercourse. It appears that, upon leaving the basement, the victim told her father what had occurred and that she was immediately sent to a physician for treatment. The victim's testimony was in part corroborated by Patsy Wilson, who, upon observing appellant's absence from the Christmas party, went to the basement to find him. Wilson testified unequivocally that upon reaching the basement he saw appellant having intercourse.

The following excerpts are from the testimony of the physician who treated the victim. This testimony, appellant claims, established no penetration and also entitled

him to an instruction on the lesser offense of detaining:

"Q. Now, if penetration had occurred would it necessarily leave bruises or trauma?

"A. No, sir.

"Q. And you found no bruises in this young lady?

"A. No, sir. None.

"Q. Would you be in a position to say by that that she had not had sex relations or had not had penetration?

"A. Oh, no. No, you couldn't state that. I think you sort of have to approach it from a positive point of view. If there had been bruises and there had been sperm, then you would say, 'Well, I knew that she did have intercourse,' but without the evidence of it all I can really say is, 'I don't know if she did or not,' because it can occur without such evidence.

\* \* \* \* \* \*

"Q. So then, can you tell this jury today for a positive fact that penetration had not been made with Brenda on the occasion that you examined her?

"A. No, sir. All I can say is that I don't know whether it had or not.

"Q. She could have had penetration an hour or two hours before you examined her and you would not be able to tell whether or not she had?

"A. That's true.

"MR. CRUMLIN: That's all. Thank you, Doctor. You may ask.

### "CROSS EXAMINATION

"Q. Dr. Yussman, if a male forcibly caused penetration to a twelve-year-old girl who had not previously had sex relations and this would have lasted for five minutes, would the body show any signs?

"A. Not necessarily. It could, of course, and in many cases it does in terms of lacerations or bruises, irritations and so on. It frequently does but it certainly can occur without such evidence, especially in a girl who has had intercourse.

"Q. No. Who has never had intercourse.

"A. Oh, I'm sorry. In a girl who has never had intercourse previously, it could occur without any such evidence. There would most likely be some evidence that it had been present.

"Q. You would say there would most likely?

"A. In a girl who had not previously had intercourse, a twelve-year-old specifically, there would most likely be some evidence.

\* \* \* \* \* \*

"Q. But you say you examined Brenda?

"A. Yes, sir.

"Q. And from your examination, could you tell whether or not Brenda had ever had sex relations before?

"A. I could not tell on her whether she had or not. I can only say that the only time that one can really tell in the majority of cases is whether a girl has had repeated intercourse. A girl who has one or two intercourses, infrequently, in most cases you can't tell at all. So, that's all I can say about it. In her case I don't know. She probably had not had repeated intercourse.

"Q. And would you say that in Brenda's case if penetration had occurred, she would have been bruised?

"A. I can't really answer that question because I don't really know the answer to that."

In his defense, appellant not only denied committing the crime, but he tried to establish an alibi that he had left the Christmas party and was enroute to a store to pur-

chase cigarettes when the crime was allegedly committed. Appellant even denied that he went to the basement with the prosecutrix, and testified that the three witnesses who so stated were all mistaken.

■■ It is our opinion that the foregoing testimony fails to support appellant's contention. This testimony is negative in character as it reflects the uncertainty of the physician as to whether or not there had been penetration. Moreover, there is no evidence from which the jury could have reasonably inferred a detaining of the child with intent to have carnal knowledge of her. Since the Commonwealth's evidence showed appellant had committed rape and the appellant's testimony showed he was not guilty by reason of his alibi, the issue in the case was adequately presented to the jury by an instruction covering the crime of rape and upon reasonable doubt. See Lewis v. Commonwealth, Ky., 279 S.W.2d 15, wherein we rejected the same contention now being made under similar facts; also see Penman v. Commonwealth, 141 Ky. 660, 133 S.W. 540. The cases relied on by appellant, such as Kitchen v. Commonwealth, 275 Ky. 564, 122 S.W.2d 121 and Page v. Commonwealth, 219 Ky. 151, 292 S.W. 741 are not here controlling as they are obviously distinguishable upon their facts.

After the case was submitted and the jury had retired to its room to reach a verdict, the jury returned to the courtroom and its foreman announced:

"We have reached a verdict and we don't want to say what it is yet but we want to ask you some questions before signing it. There is something in the instructions that we would like to have further defined. This regards parole.

"THE COURT: I can't go into that. That's strictly a matter for the Parole Board. That's strictly in the discretion of the Parole Board and they can parole a man any time they want to do so or deny a parole. I may say something

about this, when I was Commonwealth Attorney a man was eligible for parole from a life sentence after he had served eight years but that's been changed some and the Court of Appeals won't let us say a word about parole.

"JURY FOREMAN: They won't let you say a word whatsoever. They won't let you give us any information?

"THE COURT: They won't let us give you the slightest information. It's purely and simply a matter for the Parole Board.

"JURY FOREMAN: Thank you, sir.

"MR. LYON: Show my objection to the remarks regarding parole."

The jury again retired to the jury room and soon thereafter returned into open court with a verdict finding the appellant guilty of rape and fixing his punishment at fifteen years in the state penitentiary.

■ Appellant contends that the trial court's comments concerning parole prevented him from having a fair trial. However, the contention was not properly preserved for appellate review. The only objection to the comments of the trial court were, "show my objection to the remarks regarding parole." The trial court made no ruling and none was requested. There was neither a request for an admonition nor a motion for a mistrial.

While our Rules of Criminal Procedure have abolished the requirement of exceptions to rulings of the trial court, RCr 9.22 specifically requires that the complaining party make known to the trial court the action which he desires the court to take. There was no compliance with this rule during the trial and no mention is made of the trial court's comment about parole in the motion and grounds for a new trial.

■ Although we may not formally rule on the trial court's comments concerning parole, we will, nevertheless, observe that the trial court's comments could not rea-

sonably be held to be prejudicial in the instant case. However, as a future guide, when the trial court is asked concerning parole, we say again that the court should refrain from commenting upon it at all and should direct the jury to reach a verdict upon the evidence and instructions it had previously heard.

The judgment is affirmed.

All concur.