George William ABERNATHY et al., Appellants,

v.

COMMONWEALTH of Kentucky, Appellee.

Court of Appeals of Kentucky.

Feb. 28, 1969.

Rehearing Denied May 23, 1969.

Donald M. Heavrin, Charles H. Anderson, Louisville, for appellants.

John B. Breckinridge, Atty. Gen., Joseph L. Famularo, Asst. Atty. Gen., for appellee.

PALMORE, Judge.

George William Abernathy, David Lee Hodges, Frank Thomas Hollins and Julius Robinson were jointly indicted on two counts of armed robbery. KRS 433.140. Abernathy was found guilty on both counts and sentenced to 10 years on each, the terms to run consecutively. Hodges and Robinson were found guilty and sentenced to 10 years on one count. Abernathy and Hodges appeal.

We shall outline the facts the jury was authorized to believe from the Commonwealth's evidence.

Shortly before 9:00 P.M. on October 24, 1967, the four young men named above entered Miller's Pharmacy at 3234 West Broadway and ordered sandwiches and soft drinks. No one else was on the premises but Sidney Miller (the proprietor), Carol

Lanham (a 15-year-old soda fountain employe), and Mary Lanham (Carol's mother, who had just arrived for the purpose of taking Carol home, as the store's closing time was 9:00 P.M.). Abernathy ordered a half pint of liquor and, as Miller handed it to him, stepped around the counter with a pistol in hand and told Miller this was a hold-up. Abernathy then took Miller and Mary Lanham into the back room and robbed Miller of $39 in cash and Mrs. Lanham of $1 in cash (that being all the folding money Mrs. Lanham had with her at the time). While Abernathy was trying to persuade Miller to open a safe one of the other boys came into the back room and said, "Beat it. Somebody's coming to the door." The "somebody" turned out to be two police officers, one of whom entered the front door and the other went to a side door. The officer going to the side door arrived there just in time to meet Hodges coming out. In this abrupt confrontation Hodges dropped a new wrist watch which was still in its display case. He was arrested and searched, and the arresting officer discovered on his person another watch, $38 in cash and a short length of plastic clothesline cord.

Abernathy and the other two boys were arrested inside the store. A pistol identified as the one used by Abernathy in the robbery was found near the front of the store but not on Abernathy's person. (Abernathy admitted having the gun, but said he laid it down when he saw the police because he did not want to be charged with carrying a concealed deadly weapon.) Robinson was in possession of $22 in cash, a watch and a piece of clothesline cord. No incriminating evidence was found on the person of Abernathy or of Hollins. The pistol belonged to Hodges. (Both he and Abernathy testified that the pistol was inoperative and had been given by Hodges to Abernathy some days before for the purpose of having it repaired.)

Both of the appellants have been vigorously and diligently represented by appointed counsel. Their appeals are prosecuted separately, but on the same record.

During the voir dire the prospective jurors were asked, among other things, if they were acquainted with any of the prosecution's staff of attorneys. After the juror Price had been accepted, but before the panel had been filled, he stated that he knew Carl Ousley socially. (Mr. Ousley was the Commonwealth's Attorney's first assistant, but did not participate in this trial.) Counsel then moved to strike Price, but the trial court overruled the motion with the comment that he had already been accepted. Appellants contend this was prejudicial error.

RCr 9.36(1) provides that challenges shall be made first by the Commonwealth and then by the defense and that each side must exhaust its challenges to each juror before the other side begins. RCr 9.36(3) makes an exception in that the trial court may permit challenges until the jury is sworn. In this case the trial court could have permitted a late challenge of Price under RCr 9.36(3), and the question is whether it abused its discretion, to the prejudice of the appellants, in refusing to do so. If the information that Price knew Mr. Ousley socially were grounds for a challenge for cause, we would have to say it was a prejudicial error to deny the challenge. As it is, we are of the opinion that a peremptory challenge should have been permitted, but that its denial was a nonprejudicial error. The information was inconsequential. The appellants were willing to accept the juror except for the fact that he knew Mr. Ousley socially. The only basis of possible prejudice is that one of the jurors who heard the case was personally acquainted with Mr. Ousley. We do not think that lone circumstance is sufficiently suggestive of real prejudice to justify a new trial.

Also during voir dire, after the attorney for the Commonwealth had ad-

vised the prospective jurors of the penalties that would lie in the option of the jury if the defendants were found guilty, one of the jurors asked, "Would they serve that sentence?" In response the trial court stated as follows:

> "That's a matter for the Parole Board to decide. Sometimes they get out in a year, sometimes they get out in two years, it depends on how the parole board feels about his case. We have nothing whatsoever to do with that, nothing at all."

Counsel for the appellants objected at once and made timely motions that the case be withdrawn and brought before another panel.

In Ringo v. Commonwealth, Ky., 346 S. W.2d 21 (1961), the trial court in an armed robbery case inadvertently informed the jury, in reply to an inquiry, that if given a life sentence the defendant would be eligible for parole in eight years. In holding this to be a fatal irregularity this court observed, "If the jury had some doubt about the appellant's guilt—the identification of him, for example—it is easy to infer that it may have been influenced to find him guilty on the theory that he would serve only eight years, whereas if the jury had been confronted with the necessity of choosing between sentencing appellant to life imprisonment or death, as the statute authorizes (KRS 433.140), it might have considered its doubts to be more serious and failed to convict the appellant."

In the later case of Blanton v. Commonwealth, Ky., 429 S.W.2d 407 (1968), the trial court answered a similar question by a juror as follows:

> "THE COURT: I can't go into that. That's strictly a matter for the Parole Board. That's strictly in the discretion of the Parole Board and they can parole a man any time they want to do so or deny a parole. I may say something about this, when I was Commonwealth Attorney a man was eligible for parole from a life sentence after he had served eight years but that's been changed some and the Court of Appeals won't let us say a word about parole.

> "JURY FOREMAN: They won't let you say a word whatsoever. They won't let you give us any information?

> "THE COURT: They won't let us give you the slightest information. It's purely and simply a matter for the Parole Board."

A judgment sentencing Blanton to 15 years in prison was affirmed. On the point in question, this court found that the error had not been duly preserved for review, but observed nevertheless "that the trial court's comments could not reasonably be held to be prejudicial in the instant case. However, as a future guide, when the trial court is asked concerning parole, we say again that the court should refrain from commenting upon it at all," etc.

In *Blanton* the question was asked by the foreman of the jury after the jury had reached a tentative verdict, whereas in this case the incident took place before the trial began. The *Ringo* opinion was not mentioned in *Blanton*. Each case must, however, be judged on its particular facts. We do not condone the remark made by the trial court in this case. In fact, we hold it was an error. But as in the instance of any other error, we are enjoined by RCr 9.24 and 9.26 to disregard it unless we are of the opinion that it affected the "substantial rights" of the defendants. Perhaps this is not a happy choice of words, but the expression was preserved in the Rules so that the bench and bar might have the benefit of the judicial interpretation that had been given it since 1880 under §§ 340 and 353 of the Criminal Code. What it really boils down to is that if upon a consideration of the whole case this court does not believe there is a substantial possibility that the result would have been any different, the irregularity will be held nonprejudicial.

■ Necessarily, one important circumstance in determining whether a particular error was prejudicial is the weight of the evidence. Another is the amount of punishment fixed by the verdict, especially with regard to the allowable minimum and maximum. In this case the evidence of guilt was virtually conclusive, and the punishments were the least the jury was authorized to inflict. It could, of course, have found one or both defendants not guilty, but we do not see how a conscientious jury could honestly have done so. Our conclusion is that the error was not prejudicial.

■ There were certain other exchanges between court and counsel within earshot of the jurors in which it is argued that the trial court put counsel in a bad light. On one occasion, for example, the jurors may have gained the impression that they were being kept together during a recess because counsel for the defendants had not taken the initiative to authorize their separation. Again, however, we cannot believe there is any substantial possibility that in consigning a man to the penitentiary twelve decent people would be influenced in the slightest degree by so trivial a circumstance. Though sometimes an advocate may have the impression that the success of his efforts depends more on what the jury thinks of him than on what it thinks of his client, we gravely doubt that many jurors are afflicted with such myopic perception.

■ Hodges makes the further points that he was entitled to a separate trial and that the evidence was not sufficient to authorize a conviction. We find no substance in either. The evidence was ample. There was nothing in the evidence adduced either for or against the other defendants that would not have been admissible in a separate trial of Hodges. It seems to us that this was a typical case in which a joint trial was appropriate.

The judgment is affirmed.

All concur.