**James W. HOLLOMAN, Appellant,**

**v.**

**COMMONWEALTH of Kentucky, Appellee,**

**and**

**James W. Holloman, Appellant,**

**v.**

**Commonwealth of Kentucky, Appellee.**

**Nos. 1999-SC-1105-MR, 2000-SC-0475-MR.**

Supreme Court of Kentucky.

Feb. 22, 2001.

Daniel T. Goyette, Jefferson District Public Defender, Bruce P. Hackett, Deputy Appellate Defender, Office of the Jefferson District Public Defender, Louisville, Counsel for Appellant.

A.B. Chandler III, Attorney General, Kent T. Young, Assistant Attorney General, Frankfort, Counsel for Appellee.

WINTERSHEIMER, Justice.

Holloman seeks review, in separate appeals, from a judgment of conviction and from an amended judgment. In 1999–SC–1105–MR, Holloman appeals from a judgment based on a jury verdict which convicted him of one count of rape in the first degree, two counts of sodomy in the first degree and one count of sexual abuse in the first degree. He was originally sentenced to life imprisonment on each count with the sentences to run consecutively. In 2000–SC–475–MR, Holloman appeals from the Amended Judgment of Conviction and Sentence which imposed a life sentence for the rape charge, a life sentence for each of the sodomy charges and a term of five years for the sexual abuse charge, all sentences to be served consecutively. We have consolidated the two appeals.

The questions presented are whether the trial judge abused his discretion in excluding expert testimony that sought to demonstrate that the confession by Holloman was not credible; whether the trial judge abused his discretion in not permitting Holloman to ask questions of a witness on cross-examination that were not asked on direct; whether use of a racial slur at trial was prejudicial; whether other bad act evidence was properly admitted; whether the confession by Holloman was properly admitted; whether the trial judge abused his discretion in not striking a prospective juror for cause; whether the proper jury instructions were given; whether a statement by the Commonwealth in her closing argument was improper; whether the Jefferson County circuit court was without jurisdiction to amend the judgment after the notice of appeal to this Court had been filed and whether the circuit court erroneously imposed consecutive sentences.

Two police detectives went to the trailer where Holloman lived to question him about allegations of sexual abuse made by a young girl. While there, Holloman not only admitted sexually abusing that girl but he also admitted doing the same to another victim. The latter became the sole victim named in the indictment which charged Holloman with one count of first degree rape, two counts of first degree sodomy and one count of first degree sexual abuse.

The prosecuting victim was eight years old at the time of the offenses and eighteen years old at the time of trial. She testified that the acts occurred at Holloman's apartment between 1988 and 1990 while he babysat her and her sisters. The other victim, who was twelve years old at the time of trial, also testified. She stated that when she was ten years old, Holloman sexually abused her when he babysat her. Besides the testimony of the two victims, the two police detectives testified concerning the confession by Holloman. Although Holloman testified at the suppression hearing concerning the voluntariness of his confession, he did not testify at trial.

The jury found Holloman guilty of all the charges in the indictment. It recommended a sentence of life imprisonment for each charge except the sexual abuse charge for which they recommended a five-year sentence and it recommended that all the charges be served consecutively. The final judgment in this case was entered on November 2, 1999, and it reflected the recommendation by the jury except that it sentenced Holloman to life imprisonment on the sexual abuse charge.

Notice of appeal to this Court was timely filed on December 2, 1999. On April 26, 2000, the Commonwealth filed a motion in the Jefferson circuit court, seeking a corrected or amended judgment, pursuant to CR 60.01 and 60.02, to reflect that the sentence for sexual abuse first degree was five years, rather than life imprisonment. On May 3, 2000, the circuit court entered and Amended Judgment of Conviction and Sentence which imposed life sentences on the rape and sodomy offenses and a five-year sentence on the sexual abuse offense. It also ordered that all of the sentences be served consecutively for a total sentence of

life imprisonment. These consolidated appeals followed.

I. Confession and Mental State

Holloman argues that the trial court committed prejudicial error when it excluded evidence that demonstrated that his confession was not worthy of belief. The defense sought to introduce the testimony of Dr. Wagner, a Clinical Psychologist, concerning Holloman's mental retardation and how that condition affects his ability to understand and to communicate. It maintains that the proposed testimony was relevant on the question of the credibility of the confession because the condition of Holloman makes him vulnerable to suggestibility, to manipulation and to intimidation. When the trial judge ruled that the evidence could not be admitted at trial, Holloman presented the testimony of Dr. Wagner by avowal.

After Dr. Wagner testified on avowal, the trial judge excluded the testimony for three reasons. First, he agreed with the Commonwealth that the opinion testimony would go to the ultimate issue of the voluntariness of the confession. Second, he believed the defense was using the testimony of Dr. Wagner as a subterfuge to get into evidence mental retardation as a sympathy factor for the defendant. Finally, the trial judge stated that he was concerned that defense counsel did not give appropriate notice that it intended to offer such testimony.

In the context of lay testimony, the U.S. Supreme Court, in *Crane v. Kentucky,* 476 U.S. 683, 106 S.Ct. 2142, 90 L.Ed.2d 636 (1986), held that a defendant is denied his 6th and 14th Amendment right to present a defense if prohibited from presenting evidence "about the physical and psychological environment in which the confession was obtained." Therein, a 16-year-old minor was arrested for robbery and, while being questioned, confessed to a totally unrelated murder and robbery. Counsel for the defendant in that case unsuccessfully attempted to introduce evidence relating to the duration of the interrogation or the individuals who were present in order to show that the confession was not worthy of belief. In reversing the conviction and remanding the case for harmless error analysis, the U.S. Supreme Court rejected the determination by the trial court that the issue had been resolved by its earlier finding that the defendant had confessed voluntarily. The Court explained that the Due Process Clause and the Confrontation Clause of the Sixth Amendment entitle a criminal defendant to a meaningful opportunity to present a complete defense, entirely independent of the determination of the voluntariness of his confession.

*Crane v. Kentucky, supra,* is dispositive. Here, as in *Crane,* even though the issue of voluntariness had been ruled upon, Holloman also had the constitutional right to a fair opportunity to persuade the jury that his statements were not credible and should not be believed. His proffered expert testimony should not have been excluded on the basis of relevancy because it was permissible evidence bearing directly on the reliability of his statements. The stated reasons offered by the trial judge for excluding the testimony were not sufficient.

When a constitutional error may have contributed to the conviction, it is presumed to be prejudicial unless the reviewing court can declare that it was harmless error beyond a reasonable doubt. *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). In determining whether an error is prejudicial, an appellate court must consider whether upon the whole case there is a substantial possibility that the result would have been any different. *Abernathy v. Commonwealth,* Ky., 439 S.W.2d 949, 952 (1969). Two important circumstances in making such a determination are the weight of the evidence and the degree of punishment fixed by the verdict. *Abernathy, supra.* Here, although the testimony by the pros-

ecuting victim was enough to convict Holloman, the jury imposed the maximum sentence on each charge. Consequently, the error was not harmless. Thus, we must reverse the conviction and remand for a new trial.

## II. Redirect Testimony

Next, Holloman argues that the trial judge abused his discretion in declining to admit testimony of a witness on redirect. At trial, defense counsel requested that he be granted permission to go beyond the scope of cross-examination to ask a witness, the girlfriend of Holloman, about two topics that counsel had forgotten to question her about during direct examination. Defense counsel explained that he forgot to ask her about the difficulty she had in communicating with Holloman and about the phone conversation she had with him after he had talked to the police. The trial judge stated that he would not permit the inquiry because the testimony would be cumulative and was beyond the scope of cross-examination. We express no opinion as to this allegation of error because we consider it unlikely that it will reoccur upon another trial.

## III. Racial Slur

Holloman was not denied a fair trial when the trial judge permitted the Commonwealth to introduce testimony that he had used a racial slur during his interrogation by the police. The record discloses that the language used by some of the parties in this case is crude, coarse and foul and includes what might be called a racial slur. Experienced law enforcement officers encounter such common vulgarity on a regular basis. Here, the police detective testified that when he asked Holloman about sexual intercourse with one of the victims, he denied it, stating he wouldn't do that because he perceived the victim as promiscuous. When the prosecutor then asked specifically what Holloman had stated, defense counsel objected. During a bench conference, the trial judge was advised by the prosecutor and the officer about the sexual activity of one of the victims in the neighborhood. The trial judge then asked if it was necessary to the prosecution's case and was told that it was an explanation of why Holloman had stopped his own sexual activities with one of the victims. The judge overruled the defense objection that the testimony was inflammatory and irrelevant. The detective then paraphrased Holloman's graphic language in testifying that Holloman claimed he did not engage in sexual intercourse with this victim because she was "fall the 'n-word[s]' in the neighborhood." Holloman was Caucasian, and three of the nine women on the jury were African Americans.

Upon remand, if the Commonwealth again seeks to introduce testimony concerning this portion of the defendant's statement and the trial court again finds this testimony relevant, the trial court should evaluate the admissibility of this testimony pursuant to KRE 403 and determine whether the possible prejudice associated with the statement substantially outweighs its probativeness. If the trial judge finds the probative value of the statement is substantially outweighed by the danger of undue prejudice then it may be excluded. *See* KRE 403. Otherwise, the trial judge once again should allow the Commonwealth to introduce testimony concerning the defendant's statement.

## IV. Unrelated Allegations

The trial judge did not abuse his discretion in admitting evidence of related acts against a second victim. Evidence of independent sexual acts between the accused and a person other than the prosecuting victim, if similar to the act charged, and not too remote in time, is admissible to show intent, motive, or a common plan. *See, Anastasi v. Commonwealth*, Ky., 754 S.W.2d 860 (1988). The facts related by the second victim were sufficiently similar to the facts related by the prosecuting victim. In both cases, Holloman was the

victim's babysitter and was alone with the girls. Both victims were less than twelve years of age at the time of abuse. He committed the offenses against both girls on the living room floor and his bedroom. Finally, the specific sexual acts committed against both victims were very similar. Clearly, this evidence was relevant.

Furthermore, the probative value of this evidence was not substantially outweighed by the danger of undue prejudice. KRE 403. The trial judge did not abuse his discretion in admitting the evidence of prior acts of sexual misconduct by Holloman. *See, Commonwealth v. English,* Ky., 993 S.W.2d 941 (1999).

V. Exclusion of Involuntary Confession

The trial judge did not abuse his discretion in declining to suppress the confession made by Holloman. Before trial, Holloman filed a motion to suppress his statements to the police claiming they were involuntarily obtained. The trial judge held a suppression hearing at which Holloman testified, as did the police detective, Dr. Wagner and Holloman's girlfriend. The trial judge found that the statements by Holloman were made in a non-custodial setting. Indeed, the detective testified that he and another detective went to the home of Holloman to speak with him about allegations made by one of the victims. Holloman invited the detectives in, asked if they wanted something to drink and got them an ashtray. They then sat in the living room and spoke. Although Holloman was not under arrest, he was orally advised of his *Miranda* rights and signed a form acknowledging his rights. The trial judge also found that based on his observance of Holloman that he was capable of expressing himself and that he knew what he was doing when he made the statements.

After a careful review of the record, we hold that substantial evidence supports the findings by the trial court. Although Holloman presented testimony from Dr. Wagner regarding his low I.Q., that alone is an insufficient basis for find the statement was involuntary. *Cf. Colorado v. Connelly,* 479 U.S. 157, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986). The confession was properly admitted.

VI. Juror

Holloman claims that the trial court abused its discretion when it refused to strike for cause a juror who said that she was a personal friend of an assistant Commonwealth's attorney. We express no opinion as to this allegation of error because we consider it unlikely that it will reoccur upon another trial.

VII. Course of Conduct Instruction

Next, Holloman contends that the trial judge erred when it instructed the jury on a definition of "course of conduct" which did not apply to the charged offenses and which invited the jury to convict based upon uncharged offenses. The jury was instructed in the "definitions" instruction that:

> "Course of Conduct" means a pattern of conduct composed of two (2) or more acts, evidencing a continuity of purpose.

In each of the instructions defining the four offenses, the jury was told that it could find Holloman guilty if it found beyond a reasonable doubt that he had raped/sodomized/sexually abused the victim "in a continuing course of conduct." The statute in which the statutory definition of course of conduct is found is KRS 508.130 and relates to the crime of stalking. It states that the definitions in that statute, including course of conduct, are definitions as used in KRS 508.130 to 508.150. Clearly, course of conduct as defined in KRS 508.130 applies only to the crime of stalking and was improperly included in these instructions. The use of "course of conduct" as it relates to these charges should not be repeated in the instructions on retrial.

VIII. Closing Argument

Holloman maintains that the closing argument by the prosecutor in which

she told the jury that the defense attorney had to confuse one juror, while she had to convince all twelve jurors, deprived him of a fair trial. He contends that the obvious suggestion was that what the defense really wanted was for the jury to deadlock. Holloman concedes that this issue was not properly preserved but alleges that the error was palpable.

This issue is speculative. The Commonwealth did not urge the jury to deadlock. Even if the comment by the prosecutor was ambiguous, such a statement in closing argument is not presumed to have its most damaging meaning. *Cf. White v. Commonwealth,* Ky.App., 611 S.W.2d 529 (1980), *citing Donnelly v. DeChristoforo,* 416 U.S. 637, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974). No palpable error occurred.

IX. Sentencing

As it relates to his sentencing, Holloman argues that the circuit court was without jurisdiction to amend the judgment after the notice of appeal to this Court had been filed. He also contends that the circuit judge erroneously imposed consecutive sentences. We must agree. Once the appeal was perfected, the judgment could not be amended without leave of this Court. RCr 10.10. Moreover, it is erroneous for a judgment to run a sentence of life imprisonment consecutively to a five-year sentence. *Mabe v. Commonwealth,* Ky., 884 S.W.2d 668 (1994); *Hall v. Commonwealth,* Ky., 862 S.W.2d 321 (1993). Consecutive life sentences are also improper. *Lear v. Commonwealth,* Ky., 884 S.W.2d 657 (1994). Nevertheless, because we are reversing the conviction of Holloman these issues are now moot.

The judgment of conviction is reversed and remanded for a new trial.

All concur.