**James G. CLEMONS; Cindy Clemons Carter; and William Howard Clemons, Appellants,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

No. 2003–CA–002020–MR.

Court of Appeals of Kentucky.

Nov. 5, 2004.

---

**30.** *Herman v. Department of Justice,* 193 F.3d 1375, 15 IER Cases 1162 (Fed.Cir.1999).

C. Mike Moulton, Elizabethtown, for appellant.

Gregory D. Stumbo, Attorney General of Kentucky, Matthew D. Nelson, Assistant Attorney General, Frankfort, for appellee.

Before MINTON and VANMETER, Judges; MILLER, Senior Judge.[1]

## OPINION

MINTON, Judge.

Two of the non-financial conditions of James Clemons's pretrial release from jail were to avoid alcohol and to observe a curfew. The trial court revoked his bond after Clemons was caught out drinking past curfew. After jailing Clemons subject to a higher bond, the trial court also ordered Clemons's sureties, Cindy Clemons Carter and William Howard Clemons, to forfeit a portion of the original bond. The sureties argue that they did not receive the required notice of the bond for-

---

1. Senior Judge John D. Miller sitting as Special Judge by assignment of the Chief Justice pursuant to Section 110(5)(b) of the Kentucky Constitution and KRS 21.580.

feiture hearing and that the amount of the forfeiture is excessive. Because we hold that the trial court may properly order a forfeiture of bond for violation of non-financial conditions, that the amount of the forfeiture was not excessive, and that the issue of notice was not preserved for appellate review, we find no error in the trial court's decision and we affirm.

## STATEMENT OF FACTS

Clemons was arrested in August 2001 on charges of manufacturing and trafficking in methamphetamine. Clemons's father, William H. Clemons, posted a $50,000 cash bond for his release. When Clemons appeared for arraignment on the charges, his original bond was changed to a $20,000 property bond. Clemons's brother and sister, William Howard Clemons and Cindy Clemons Carter, executed the second bond.

The trial court placed several non-financial conditions on Clemons's release, including a prohibition against drinking or possessing any alcoholic beverages, and a requirement that he stay at home between 6:00 p.m. to 6:00 a.m. On July 10, 2003, a state trooper attempting to serve a subpoena on Clemons found him at approximately 11:00 p.m. at a house some five miles from his residence. The officer smelled alcohol on Clemons's breath and administered a portable breath test (PBT). The PBT showed Clemons's blood alcohol level to be .0516. Clemons admitted to the officer he had drunk two glasses of wine. He also claimed he was out past curfew for purposes of employment. According to Clemons, he had been hired to housesit for a friend.

## PROCEDURAL HISTORY

Following the report that Clemons had violated his bond conditions, the Common-

wealth filed a motion to revoke bond. The revocation hearing was held on July 22, 2003. The police officer who administered the PBT and Clemons were the only witnesses. At the conclusion of the hearing, the court concluded Clemons had violated the non-financial conditions of his bond by drinking alcohol. Therefore, his bond was revoked, Clemons was jailed, and a new bond raised to $50,000 cash.

Upon request by defense counsel, a hearing on the motion to forfeit bond was reassigned to September 16, 2003. The order reassigning the hearing was supposedly distributed to counsel for Clemons and the Commonwealth, as well as individually to the sureties. For reasons not apparent in the record, the hearing was not held on September 16 but, rather, on August 19, 2003. Clemons, both sureties, and counsel for all parties involved were present. After hearing arguments from both sides, the court ordered the forfeiture of $5,000 of the $20,000 bond. This appeal followed.

## THE COURT'S FORFEITURE OF $5,000 WAS NOT EXCESSIVE

The sureties first argue the court's forfeiture of $5,000 of the $20,000 property bond was excessive. In support of this argument, the sureties argue that during the roughly two years Clemons was released on bond, he was present at every court session where his presence was required. Therefore, the sureties assert that since Clemons had previously complied with the conditions of his bond, the $5,000 forfeiture is unwarranted. We disagree.

The purpose of posting bonds "is to secure the defendant's being arrested and brought to justice."[2] Bonds are per-

---

**2.** *Abrams v. Commonwealth,* 254 Ky. 68, 70    S.W.2d 983, 984 (1934); *see also, Johnson*

mitted by the court "for the convenience of a person not yet proved to be guilty, and to protect the state against the expense of keeping such persons in jail."[3] Bonds are discretionary, and the decision to impose, forfeit, or remit bonds lies solely with the trial court.[4]

■ But bonds are also used to impose certain non-financial conditions to control the defendant's behavior while on pretrial release. The majority of jurisdictions allow courts to forfeit a defendant's bond if one of these conditions is breached.[5] Kentucky case law has yet to broach the subject of whether bond forfeiture is appropriate for violation of non-financial conditions. However, the language of the applicable statute and procedural rule clearly indicates the General Assembly's intent that courts have the option to forfeit for such violations. KRS[6] 431.545 plainly states that bond forfeiture is appropriate if a defendant "shall willfully fail to appear **or shall willfully fail to comply with the conditions of his release....**"[7] Likewise, RCr[8] 4.42 states:

(1) If at any time following the release of the defendant and before the defendant is required to appear for trial the court is advised of a material change in the defendant's circumstances **or that the defendant has not complied with all conditions imposed upon his or her release,** the court having jurisdiction may order the defendant's arrest and require the defendant or the defendant's surety or sureties to appear and show cause why the bail bond should not be forfeited or the conditions of release be changed, or both.

. . . .

(3) Where the court is acting on advice that the defendant has not complied with all conditions imposed upon his or her release, the court shall not change the conditions of release or order forfeiture of the bail bond unless it finds by clear and convincing evidence that the defendant has wilfully [sic] violated one of the conditions of his or her release or that there is a substantial risk of nonappearance.[9]

*Bonding Company, Inc. v. Commonwealth,* Ky., 487 S.W.2d 911, 913 (1972).

3. *See Abrams, supra.*

4. *Abraham v. Commonwealth,* Ky.App., 565 S.W.2d 152, 158 (1977); *see also, United Bonding Insurance Company, Kent Cox, Agent v. Commonwealth,* Ky., 461 S.W.2d 536, 538 (1971).

5. *See, e.g., State v. Korecky,* 169 N.J. 364, 777 A.2d 927, 933–934 (2001) ("the majority rule in other jurisdictions is that bail may be forfeited for a violation of a condition other than nonappearance.") (*citing, State v. Williams,* 730 A.2d 677, 680 (Me.1999)) (affirming forfeiture of bail after finding defendant possessed alcohol in violation of condition of release); *State v. Hernandez,* 1 Neb.App. 830, 511 N.W.2d 535, 538–39 (1993) (holding bond properly forfeited because defendant breached "crime-free" condition); *State v. McLaugh-*

lin, 122 Ohio App.3d 418, 701 N.E.2d 1048, 1051 (1997) (holding partial forfeiture of appearance bond proper when defendant violated bond condition that he have "no contact" with victim); *Bridges v. Superior Court,* 121 R.I. 101, 396 A.2d 97, 101 (1978) ("[B]ail system is designed to ensure the accused's presence at court and to keep the accused as much under control of the court as if he were actually in the custody of a court officer."); *State v. Badzmierowski,* 171 Wis.2d 260, 490 N.W.2d 784, 786 (App.1992) (holding bond properly forfeited when defendant violated bond no-contact condition).

6. Kentucky Revised Statutes.

7. KRS 431.545 (emphasis added).

8. Kentucky Rules of Criminal Procedure.

9. RCr 4.42(1), (3) (emphasis added).

Based on these rules, we believe the trial court was acting within its authority when it forfeited $5,000 of the $20,000 property bond posted for Clemons's release. There was clear and convincing evidence at the forfeiture hearing that Clemons had, in fact, violated his release conditions. Not only did the trooper testify that Clemons's blood alcohol level was .0516, but Clemons himself testified he had been drinking wine. Since his bond conditions affirmatively stated Clemons was prohibited from drinking, consuming, or possessing alcoholic beverages, his actions were clearly in violation.

Likewise, we do not believe the forfeiture of $5,000 was excessive. There are no clear-cut rules defining what is and what is not "excessive." However, as discussed, discretion regarding bond issues lies with the trial court. We do not have the authority to reverse that decision unless we determine there has been an abuse of discretion. In this case, we do not believe the $5,000 forfeiture constitutes such an abuse.

Finally, the sureties' argument that forfeiture was improper because Clemons had until that time complied with his release conditions is without merit. The bond conditions were not based upon a reward system. And there is no merit to an argument that the trial judge should have waived bond forfeiture for Clemons's violation of the conditions merely because of his previous compliance. Thus, we affirm.

### THE NOTICE ISSUE WAS NOT PRESERVED AT THE TRIAL LEVEL

■ The sureties' second point of contention is that the court failed to give them proper notice of the August 19, 2003, for-feiture hearing. They argue that under RCr 4.52, they should have received notice twenty days prior to the hearing.

■ This argument is also without merit due to failure to preserve the issue at the trial level. It is the responsibility of counsel "to present to the trial court those questions of law which may become issues on appeal."[10] If an issue is not properly preserved, this Court may only review the matter for "[a] palpable error which affects the substantial rights of a party...."[11]

After viewing the entire videotape of the August 19, 2003, forfeiture hearing, we conclude that there was no error affecting the rights of the sureties. All interested parties were personally present and represented by counsel at the hearing. No mention whatsoever was made of lack of notice, nor was a continuance requested. Likewise, both sides were given a fair opportunity to present their case. Since failure to preserve the issue did not lead to palpable error, we are without authority to review this issue.

However, even if the notice issue had been preserved and notice had, in fact, been deficient, we agree with the Commonwealth that the sureties did not establish prejudice. Again, as stated, all parties were present and represented by counsel. Each side was given ample opportunity to present an argument before the court. RCr 9.24 states, "[t]he court ... must disregard any error or defect in the proceeding that does not affect the substantial rights of the parties." Because we believe the sureties were in no way prejudiced, we disregard any alleged error or deficiency in the notice.

**10.** *Todd v. Commonwealth*, Ky., 716 S.W.2d 242, 248 (1986); *see also, Turner v. Commonwealth*, Ky.App., 460 S.W.2d 345, 346 (1970); RCr 9.22 (emphasis omitted).

**11.** RCr 10.26.

For the foregoing reasons, the decision of the trial court is affirmed.

ALL CONCUR.