**Darryl GALLOWAY, Appellant**

v.

**COMMONWEALTH of Kentucky, Appellee.**

No. 2012–SC–000701–MR.

Supreme Court of Kentucky.

March 20, 2014.

Kathleen Kallaher Schmidt, Assistant Public Advocate, Counsel for Appellant.

Jack Conway, Attorney General of Kentucky, James Hays Lawson, Assistant Attorney General, Counsel for Appellee.

Opinion of the Court by Justice KELLER.

Darryl A. Galloway, Jr. (Galloway) appeals from a judgment of the Warren Circuit Court convicting him of two counts of rape in the first degree, sodomy in the first degree, and assault in the fourth degree, third offense, and sentencing him to forty-five years' imprisonment. Galloway appeals as a matter of right from the resulting judgment. Ky. Const. § 110(2)(b). For the foregoing reasons, we affirm in part, reverse in part, vacate in part, and remand.

## I. FACTUAL AND PROCEDURAL BACKGROUND.

The following facts are not in dispute. In 2011, Galloway and Lisa Sexton (Sexton) began living together. Galloway worked at Sun Products, and in June 2011, Galloway helped Sexton get a job there. On Sexton's first day of work, Galloway apparently became jealous and angry during Sexton's shift. After leaving work together, Galloway backhanded Sexton causing her nose and the left side of her face to swell and bruise. Additionally, there was a struggle in the car between Sexton and Galloway. Sexton's necklace and a car vent were broken, and a footprint was made on a window in the vehicle.

The following facts regarding what occurred thereafter are disputed. Galloway continued to hit Sexton while he was driving. At some point, Galloway told Sexton that he was going to take her somewhere where no one could hear her scream or help her. According to Sexton, Galloway drove her to a secluded spot. Galloway then got out of the car, walked around to the passenger side where Sexton was sitting, and forced Sexton to perform oral sex on him. Sexton further testified that Galloway then threw the car seats for her children out of the backseat of the car, grabbed her by the neck, threw her in the backseat, and raped her. On the way back to their apartment, Galloway stopped at a gas station. While at the gas station, Galloway pulled out a butcher knife from his pants and told Sexton he would kill her and her kids if she moved.

When they returned to their apartment, Galloway told Sexton that he was going to get her help if she would say she was robbed. Sexton testified that Galloway held the knife as they walked into their apartment. Once inside, Galloway turned over the television to make it look like Sexton had been robbed. Galloway made Sexton bathe and then raped her again in their bedroom on a bare mattress. Afterwards, he grabbed a knife and stabbed the mattress around Sexton while laughing and calling her names. Sexton testified

that Galloway later tossed his phone to her and told her to call for medical assistance. Sexton told the 911 operator she had been robbed and needed help. Galloway then drove Sexton to the hospital and waited for her to be examined.

Detective Michael Myrick (Detective Myrick) testified that he interviewed Galloway in a quiet room of the hospital. The Commonwealth played the recording of the interview during its case-in-chief at trial. In the interview, Galloway stated that Sexton had been robbed, and that when he came home, Sexton was crying and her purse strap was torn. Galloway denied assaulting Sexton numerous times throughout the interview.

In this case, the trial was trifurcated. During the first phase, the jury convicted Galloway of two counts of first-degree rape, first-degree sodomy, and fourth-degree assault. The jury acquitted Galloway of unlawful imprisonment. During the second phase, the jury convicted Galloway of fourth-degree assault, third offense based on two prior convictions of fourth-degree assault. During the third phase, the penalty phase, the jury returned with a sentence of twenty years' imprisonment for each first-degree rape conviction, to run consecutively; twenty years' imprisonment for the first-degree sodomy conviction, to run concurrently; and five years' imprisonment for the fourth-degree assault, third offense, to run consecutively, for a total of forty-five years' imprisonment. Consistent with the jury's recommendation, the trial court sentenced Galloway to forty-five years' imprisonment. This appeal followed.

Additional facts are set forth as necessary below.

## II. ANALYSIS.

### A. Sodomy Charge.

Galloway argues that the trial court erred in denying his motion for directed verdict as to the sodomy charge. We disagree.

In order to overcome a motion for a directed verdict, the Commonwealth must present "more than a mere scintilla of evidence." *Commonwealth v. Benham*, 816 S.W.2d 186, 187–88 (Ky.1991). When ruling on a directed verdict motion, "the trial court must assume that the evidence for the Commonwealth is true," and must draw all fair and reasonable inferences in the Commonwealth's favor. On appeal, we will reverse a trial court's denial of a directed verdict only if, "under the evidence as a whole, it would be clearly unreasonable for a jury to find guilt...." *Id.* at 187.

KRS 510.070(1)(a) states that, "A person is guilty of sodomy in the first degree when ... [h]e engages in deviate sexual intercourse with another person by forcible compulsion[.]" As set forth in KRS 510.010(1), " '[d]eviate sexual intercourse' means any act of sexual gratification involving the sex organs of one person and the mouth or anus of another[.]"

At trial, Sexton testified that Galloway forced her to perform oral sex on him. Galloway forced her head and mouth down on his penis. Sexton further testified that because she could not open her mouth due to her swollen jaw, Galloway's penis did not go past her lips and teeth. Galloway argues that, because his penis did not go farther than Sexton's lips and teeth, there was no evidence that he engaged in "deviate sexual intercourse." We disagree. Lips and teeth are part of "the mouth." Therefore, Sexton's testimony was sufficient evidence that there was an "act of sexual gratification involving the sex organs of [Galloway] and the mouth [of Sexton]." Accordingly, we conclude that the trial court did not err in denying Gallo-

way's motion for a directed verdict as to the sodomy charge.

### B. Fourth–Degree Assault, Third Offense.

■ As noted above, in this case, the trial was trifurcated. During the first phase, the jury convicted Galloway of fourth-degree assault. During the second phase, the jury convicted Galloway of fourth-degree assault, third offense based on two prior convictions of fourth-degree assault.[1]

For a criminal defendant to be convicted of fourth-degree assault, third offense, the Commonwealth must prove that the defendant had two prior assault convictions involving family members or members of an unmarried couple within five years. Kentucky Revised Statute (KRS) 508.032. On appeal, Galloway argues that his motion for a directed verdict as to this charge should have been granted because the evidence supplied by the Commonwealth was insufficient for a jury to conclude beyond a reasonable doubt that he had been previously convicted of assault of a family member or a member of a an unmarried couple. KRS 508.032(1) provides:

> If a person commits a third or subsequent offense of assault in the fourth degree under KRS 508.030 within five (5) years, and the relationship between the perpetrator and the victim in each of the offenses meets the definition of family member or member of an unmarried couple, as defined in KRS 403.720, then the person may be convicted of a Class D felony. If the Commonwealth desires to utilize the provisions of this section, the Commonwealth shall indict the defendant and the case shall be tried in the Circuit Court as a felony case. The

jury, or judge if the trial is without a jury, may decline to assess a felony penalty in a case under this section and may convict the defendant of a misdemeanor. The victim in the second or subsequent offense is not required to be the same person who was assaulted in the prior offenses in order for the provisions of this section to apply.

"Family member" is defined in KRS 403.720(2) as "a spouse, including a former spouse, a grandparent, a parent, a child, a stepchild, or any other person living in the same household as a child if the child is the alleged victim[.]" KRS 403.720(4) defines "[m]ember of an unmarried couple" as "each member of an unmarried couple which allegedly has a child in common, any children of that couple, or a member of an unmarried couple who are living together or have formerly lived together."

In *Lisle v. Commonwealth,* 290 S.W.3d 675, 678–79 (Ky.App.2009), the Kentucky Court of Appeals interpreted KRS 508.032(1) and held:

> It is an issue of first impression in the Commonwealth whether this family violence statute is a mere "enhancement" statute for which the prior convictions involving spouses or family members are just "sentencing factors" or if they are "elements" which must be proven beyond a reasonable doubt by the Commonwealth.
>
> . . . .
>
> We are persuaded by the approach that a prior conviction for family violence is an essential element of the felony assault offense. While the analogous statute KRS 189A.010(5) (the "DUI statute") is viewed as merely an enhancement statute, it does not require

---

1. Trifurcating the trial was a reasonable approach, because the jury had to first determine whether Galloway was guilty of fourth-degree assault before it could determine whether he was guilty of fourth-degree assault, third offense.

any additional proof beyond the existence of prior DUI convictions. *See, e.g., Commonwealth v. Duncan,* 939 S.W.2d 336 (Ky.1997); *Commonwealth v. Ramsey,* 920 S.W.2d 526, 528 (Ky. 1996). In addition to the elements necessary to prove fourth-degree assault, KRS 508.032 requires: (1) proof of prior conviction(s); (2) proof that the prior conviction(s) occurred within the past five years; *and* (3) proof that the prior victim(s) were a family member or member of an unmarried couple. We are further guided by the fact that an action under KRS 508.032 originates in the circuit court as a felony offense, whereas violations of KRS 508.030 originate in the district court. A separate element, other than the prior conviction, is required under KRS 508.032: *proof of the identity of the victim and the nature of the relationship between the perpetrator and the victim.*

(Emphasis in original).

■ Initially, we note that, as to evidence of prior convictions, we have previously instructed trial courts to "avoid identifiers, such as naming of victims, which might *trigger memories of jurors who may*—especially in rural areas—have prior knowledge about the crimes." *Mullikan v. Commonwealth,* 341 S.W.3d 99, 107–08 (Ky.2011). Specifically, in *Mullikan,* this Court defined what evidence is permissible in describing the "nature of prior offenses" as set forth in KRS 532.055(2)(a) during the sentencing stage of felony cases and concluded that "evidence of prior convictions is limited to conveying to the jury the elements of the crimes previously committed." *Id.* at 109. Unlike KRS 532.055(2)(a), KRS 508.032(1) specifically requires the Commonwealth to prove that "the relationship between the perpetrator and the victim in each of the offenses meets the definition of family member or

member of an unmarried couple." Thus, as correctly noted in *Lisle,* there must be "proof of the identity of the victim and the nature of the relationship between the perpetrator and the victim." 290 S.W.3d at 679.

In this case, the Commonwealth called the Detective for the Warren County Commonwealth's Attorney, Gordon Turner (Detective Turner), to testify about the contents of certified copies of two misdemeanor convictions Galloway received for fourth-degree assault. The certified copies were marked and introduced as exhibits, but, by agreement of the parties, were not sent back as exhibits to the jury due to extraneous information written on the certified copies. Nothing in Detective Turner's testimony provided any information about the relationship between Galloway and the victims in those assaults. Detective Turner only testified that Galloway had two prior convictions from 2008 and 2010 both for "assault fourth degree, domestic violence."

The Commonwealth contends that Detective Turner's testimony that the convictions were for "assault fourth degree, domestic violence" was sufficient and that the Commonwealth did not need to put on additional evidence to show that the victim in each assault case was either the Appellant's "family member" or a "member of an unmarried couple." In support of its arguments, the Commonwealth cites to KRS 403.720(1) which defines "[d]omestic violence and abuse" as "physical injury, serious physical injury, sexual abuse, assault, or the infliction of fear of imminent physical injury, serious physical injury, sexual abuse, or assault *between family members or members of an unmarried couple* [.]"

We disagree with the Commonwealth. Because there was no "proof of the identity of the victim[s] and the nature of the

relationship between the perpetrator and the victim[s]," we conclude that the trial court erred in failing to grant Galloway's motion for a directed verdict on the fourth-degree assault, third offense, charge. *Lisle*, 290 S.W.3d at 679. However, this holding does not negate Galloway's conviction of fourth-degree assault.

## C. Statements Made to Police.

Next, Galloway argues that his statement to Detective Myrick should have been suppressed because he was in custody at the time, and Detective Myrick had not advised him of his rights pursuant to *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Galloway admits that he did not make a motion to suppress his statement or otherwise preserve this issue and requests palpable error review pursuant to Kentucky Rule of Criminal Procedure (RCr) 10.26. The Commonwealth argues that Galloway is not entitled to palpable error review because the record is not sufficient to determine if Galloway was in custody, and Galloway's failure to object to the introduction of the statement may have been trial strategy. Because he did not ask the trial court to suppress his statement, Galloway is asking us to do so. This we will not do.

The proper method to seek suppression of a statement is set forth in RCr 9.78.

> If at any time before trial a defendant moves to suppress, or during trial makes timely objection to the admission of evidence consisting of (a) a confession or other incriminating statements alleged to have been made by the defendant to police authorities, (b) the fruits of a search, or (c) witness identification, the trial court shall conduct an evidentiary hearing outside the presence of the jury and at the conclusion thereof shall enter into the record findings resolving the essential issues of fact raised by the

motion or objection and necessary to support the ruling. If supported by substantial evidence the factual findings of the trial court shall be conclusive.

Once a trial court has ruled on a motion to suppress, we may review that ruling; however, as set forth above, we defer to the trial court's findings of fact. If the trial court has not held an evidentiary hearing or been asked to make any findings of fact, as is the case herein, there simply is nothing for us to review.

Furthermore, if we were inclined to undertake the review sought by Galloway, there is not sufficient evidence in the record for us to determine if Galloway was in custody.

> Custodial interrogation has been defined as questioning initiated by law enforcement after a person has been taken into custody or otherwise deprived of freedom of action in any significant way. *Miranda* warnings are required only where there has been such a restriction on the freedom of an individual as to render him in custody. The inquiry for making a custodial determination is whether the person was under formal arrest or whether there was a restraint of his freedom or whether there was a restraint on freedom of movement to the degree associated with formal arrest. Custody does not occur until police, by some form of physical force or show of authority, have restrained the liberty of an individual. The test is whether, considering the surrounding circumstances, a reasonable person would have believed he or she was free to leave. Some of the factors that demonstrate a seizure or custody have occurred are the threatening presence of several officers, physical touching of the person, or use of a tone or language that might compel compliance with the request of the police. In

this case there is no evidence that any of these factors were present.

*Commonwealth v. Lucas,* 195 S.W.3d 403, 405–06 (Ky.2006) (citations omitted).

Galloway argues that he:

> was in custody as soon as Detective Myrick entered the quiet room and began to interview him.... The quiet room was a confined space and [Galloway] could not freely move around without going past Myrick and leaving the room. The detective made a show of authority by clearly identifying himself as a police officer. He tape recorded the interview. He did not tell [Galloway] that he was free to leave at any time. He initially told [Galloway] he was there just to get some general information but after 12 minutes became confrontational and accusatory.... His tone was challenging and confrontational, repeatedly telling [Galloway] they did not believe his story.... Even if a reasonable person felt free to leave before, once Myrick told [Galloway] that [Sexton] was accusing him and Myrick did not believe [Galloway], no reasonable person would have felt he could have walked out of that room without being arrested.

■ It is undisputed that Detective Myrick questioned Galloway in the quiet room. However, as noted by the Commonwealth, there is no evidence, other than Galloway's unsupported statements in his brief, that the room was a confined space or that he could not move freely without going past Detective Myrick and leaving the room. Furthermore, there is no evidence that Detective Myrick touched Galloway. Finally, as noted by the Commonwealth, Detective Myrick left Galloway unattended in the room for an unspecified period of time. There is no evidence regarding the length of time Galloway was alone; whether the door to the room was open or closed when Detective Myrick left; whether the door was locked, unlocked, or even had a lock; and whether Galloway remained in the room or left, returning before Detective Myrick did. Detective Myrick's accusatory tone of voice and his statements that he did not believe Galloway are the only pieces of evidence in the record that this was a custodial interrogation. Those two factors, standing alone, are not sufficient to show that Galloway was in custody.

■ Finally, we note, as did the Commonwealth, that it has the burden of proving "by a preponderance of the evidence ... the voluntariness of the defendant's ... incriminating statement...." *Grady v. Commonwealth,* 325 S.W.3d 333, 349 (Ky. 2010). Because the Commonwealth has the burden of proof, Galloway cannot wait until after trial to raise an issue with regard to the voluntariness of his statement. Doing so foreclosed the Commonwealth from presenting evidence as to an issue it did not know existed.

For the foregoing reasons, Galloway's argument that he was in custody when interrogated by Detective Myrick is without merit. Therefore, we need not address the Commonwealth's argument regarding trial strategy.

### D. Testimony by Detective Davis.

■ Next, Galloway argues that Detective Matt Davis (Detective Davis) should not have been allowed to testify about whether the slits in the mattress were made by someone pressing down a knife. Specifically, Galloway argues that the Commonwealth did not lay a proper foundation for Detective Davis to render an opinion, either as an expert or as a lay witness, about whether the slits in the mattress were consistent with knife slits. Galloway admits that this issue is not pre-

served and requests palpable error review pursuant to RCr 10.26.

At trial, Detective Davis testified that he worked for the Bowling Green Police Department and that he served as the crime scene processor in this case. As part of his duties, Detective Davis went to the hospital and took a number of photos of Sexton and Galloway. Detective Davis also went to the apartment where Galloway and Sexton lived. Detective Davis testified that he took additional pictures of the exterior and interior of the apartment. One item he photographed was the mattress in the bedroom that Galloway and Sexton shared. This photograph was displayed on a projector for the jury.

On direct examination by the Commonwealth, Detective Davis told the jury that there appeared to be some cut marks in the mattress. He further testified that he tried to document some of these "slit marks," saying that he saw one major one and a couple of smaller ones.

When asked on cross-examination about the large mark on the mattress, Detective Davis testified that, as to the large slit mark, one could stand on top of it and look down in it and see an impression made down into the mattress. He admitted that it was a possible slit mark. Detective Davis then stated that the large slit was consistent with a knife blade based on the narrow width of the slit. He further testified that there were other holes across the mattress.

We note that Detective Davis did not testify during direct examination that he believed that a knife caused the slit marks on the mattress. Rather, his testimony regarding the possibility that a knife caused the marks came in response to questioning on cross-examination regarding the large slit mark. Galloway cannot complain about a response he elicited. *Hodge v. Commonwealth,* 17 S.W.3d 824,

845 (Ky.2000). Accordingly, we find no error, palpable or otherwise.

E. Court Costs.

Finally, Galloway urges the Court to vacate the trial court's imposition of court costs in the amount of $175. Galloway concedes that this issue is not preserved for our review. Regardless, we have "inherent jurisdiction to cure such sentencing errors[.]" *Travis v. Commonwealth,* 327 S.W.3d 456, 459 (Ky.2010). Indeed, "sentencing issues may be raised for the first time on appeal[.]" *Cummings v. Commonwealth,* 226 S.W.3d 62, 66 (Ky. 2007).

At the time of trial, Galloway was represented by a public defender, and the trial court granted Galloway's motion to proceed *in forma pauperis* on appeal. However, as we held in *Maynes v. Commonwealth,* a "needy" person under KRS 31.100 who is entitled to representation by a public defender does not necessarily qualify as a "poor" person who is exempt from the imposition of court costs under KRS 23A.205. 361 S.W.3d 922, 929 (Ky. 2012). Having so held, we stated that "[w]ithout some reasonable basis for believing that the defendant can or will soon be able to pay, the imposition of court costs is indeed improper." *Id.* at 930. The Court thus distinguished Maynes, a defendant who had properly been assessed costs because he had been granted probation, from defendants who had improperly been assessed costs following the imposition of lengthy prison terms. *Id. (distinguishing Wiley v. Commonwealth,* 348 S.W.3d 570 (Ky.2010); *Travis v. Commonwealth,* 327 S.W.3d 456 (Ky.2010); *Ladriere v. Commonwealth,* 329 S.W.3d 278 (Ky. 2010); and *Edmonson v. Commonwealth,* 725 S.W.2d 595 (Ky.1987)).

Based on Galloway's lengthy sentence, it is unlikely that he will be able to pay court costs. However, it appears from the record that the trial court never determined whether Galloway was a "poor person" as defined in KRS 453.190(2).[2] If he is, he would be exempt from the imposition of court costs pursuant to KRS 23A.205. We therefore remand this case to the trial court for consideration, in light of *Maynes*, of whether Galloway is a "poor person" under KRS 453.190(2) and KRS 23A.205.

### III. CONCLUSION.

■ We reverse the portion of the judgment of the Warren Circuit Court convicting Galloway of fourth-degree assault, third offense and vacate the corresponding sentence for that offense. Because we are reversing based upon insufficiency of the evidence as to that charge, retrial for fourth-degree assault, third offense is precluded under the double jeopardy clause of the Fifth Amendment. *Lisle*, 290 S.W.3d at 681 (*citing Burks v. United States*, 437 U.S. 1, 11, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978)). However, as previously noted, the preceding does not negate Galloway's conviction for fourth-degree assault. Because Galloway was not sentenced for the fourth-degree assault conviction, we remand for sentencing consistent with KRS 508.030 for that conviction. Furthermore, the imposition of court costs is reversed, and we remand for further consideration in light of *Maynes v. Commonwealth.*

MINTON, C.J., ABRAMSON, KELLER and NOBLE, JJ., concur. SCOTT, J., concurs by separate opinion, in which CUNNINGHAM and VENTERS, JJ. Join.

**SCOTT, J., Concurring:**

I concur with my colleagues in this case, and add the following in connection to Galloway's motion for directed verdict on his fourth-degree assault, third-offense charge. The trial court erred in not granting his motion for directed verdict on this charge because there is no definitive link between Galloway's prior offenses for fourth-degree assault and the definition of "domestic violence and abuse" found in KRS 403.720.

Galloway's prior fourth-degree assault convictions were labeled "domestic violence" as part of a Uniform Offense Reporting (UOR) code associated with the offense. UOR codes are owned and assigned by the Kentucky State Police. No proof was introduced to establish that the persons involved with creating and using this UOR code label were referencing KRS 403.720 and its definition of "domestic violence and abuse." It is therefore possible that an offense coded "assault fourth-degree, domestic violence," references something broader than the definition of KRS 403.720, such as two individuals who are mere roommates. Given this lack of authoritative connection, the Commonwealth offered insufficient proof that Galloway's prior victims were necessarily family members or members of an unmarried couple. For this reason, I concur that the trial court erred in denying Galloway's motion for directed verdict on this issue.

CUNNINGHAM and VENTERS, JJ., join.

---

2. "A 'poor person' means a person who is unable to pay the costs and fees of the proceeding in which he is involved without depriving himself or his dependents of the necessities of life, including food, shelter, or clothing." KRS 453.190(2).