Jeremy BREWER, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

2013–SC–000467–DG

Supreme Court of Kentucky.

RENDERED: SEPTEMBER 24, 2015

Rehearing Denied February 18, 2016

Counsel for Appellant: Brandon Neil Jewell, Assistant Public Advocate.

Counsel for Appellee: Jack Conway, Attorney General of Kentucky, James Hays Lawson, Assistant Attorney General.

## OPINION OF THE COURT BY CHIEF JUSTICE MINTON

In 1996, the Kentucky General Assembly enacted Kentucky Revised Statutes (KRS) 508.032, a statute that purported to enhance "by one degree" the criminal penalty imposed upon a conviction of third or subsequent misdemeanor fourth-degree assault when all of the previous convictions arose from charges in a statutorily defined domestic situation. Ostensibly to address the jurisdictional and procedural quagmire created by that statute, the General Assembly amended the law in 2000 to say that prosecution under the statute would commence by grand jury indictment and proceed as a felony case in the circuit

court to the end that an offender "may be convicted of a Class D felony."

Rather curiously, the 2000 version further provided that "[t]he jury, or judge, if the trial is without a jury, may decline to assess a felony penalty in a case under this section and may convict the defendant of a misdemeanor." As contrived as any Rube Goldberg machine is a criminal prosecution under this statute.

In a prosecution under the 2000 version of KRS 508.032, Jeremy Russell Brewer entered a conditional guilty plea to fourth-degree assault, third or subsequent offense within five years, while reserving the right to assert on appeal that the trial court erred when it ruled that evidence of his prior assault convictions was admissible in the guilt phase of his trial. The trial court entered judgment sentencing Brewer to two-and-a-half years' imprisonment, probated for five years with various conditions on that probation.

Brewer raised the reserved issue on appeal to the Court of Appeals. Finding one of its recent decisions, *Lisle v. Commonwealth*,[1] squarely on point and dispositive of Brewer's issue, the Court of Appeals affirmed the trial court's ruling.

The issue, as framed before us by Brewer on discretionary review, is a narrow one: are prior fourth-degree-assault convictions admissible in the Commonwealth's case-in-chief in the prosecution of fourth-degree assault under KRS 508.032? We hold that prior convictions are not admissible in the case-in-chief, which means we must reverse the Court of Appeals because we conclude that *Lisle* does not resolve Brewer's evidentiary issue. But we accepted discretionary review because resolution of Brewer's evidentiary issue requires us to focus on the broader challenge of how a defendant should be tried under

1. 290 S.W.3d 675 (Ky.App. 2009).

KRS 508.032.[2] Our analysis is especially prudent in light of our recent decision in *Galloway v. Commonwealth* where we endorsed as "a reasonable approach" the trial court's trifurcation of issues in a prosecution under KRS 508.032.[3]

## I. FACTUAL AND PROCEDURAL BACKGROUND.

The grand jury indicted Brewer under KRS 508.032 on one count of fourth-degree assault, third or subsequent offense within five years. Before trial, the Commonwealth filed notice of its intention to introduce prior-bad-acts evidence under Kentucky Rule of Evidence (KRE) 404(b). Specifically, the Commonwealth notified the trial court it intended to introduce in its case-in-chief Brewer's two earlier fourth-degree-assault convictions, the details surrounding those convictions, and three more uncharged crimes. The Commonwealth planned to introduce this evidence through the testimony of the alleged victim.[4] Brewer objected.

Following a hearing, the trial court ruled Brewer's prior fourth-degree-assault convictions, including the details and circumstances of those convictions, were admissible in the Commonwealth's case-in-chief. Brewer then withdrew his not-guilty plea and entered a conditional guilty plea, reserving the right to appeal the "Court's ruling on Commonwealth's 404(b) motion. Particularly[, the] Court's ruling on admission of details of two prior convictions and convictions themselves in [the Commonwealth's] case in chief."

## II. ANALYSIS.

Generally speaking, we review a trial court's decision on evidentiary matters for an abuse of discretion;[5] but the real crux of this case demands statutory interpretation and this Court's attention to its inherent authority to set governing procedures for the orderly administration of justice—all matters of law. De novo review is accordingly appropriate for those matters.[6]

KRS 508.032 states:

---

**2.** We reject the Commonwealth's argument that Brewer has failed to preserve any claim regarding whether proceedings involving KRS 508.032 should be trifurcated, bifurcated, or otherwise. The basis for this argument is Brewer's failure to mention anything about trifurcation to the trial court during the admissibility hearing. Instead, Brewer argued the Commonwealth could only admit the prior-conviction evidence in a separate sentencing phase. We understand the Commonwealth's position but reject it as overly rigid.

Brewer properly objected to the Commonwealth's admission of prior-conviction evidence and argued the evidence at issue should only be admissible in a separate phase of the proceedings. So the trial court was fully apprised of the issue and presented with an opportunity to rule on the merits. We can acknowledge Brewer did not utter the magic word—trifurcation—and yet find the issue properly before this Court. As we have said before, we review issues, not arguments. And, more importantly, the Commonwealth—in arguing Brewer did not mention trifurca-

tion to the trial court—is focused solely on the remedy to the issue Brewer *did* present to the trial court, *i.e.* the prior-conviction evidence was inadmissible. This Court's inherent authority to craft procedures for the courts of the Commonwealth is sufficient to overcome any purported preservation problems. As a final aside, given the law at the time of the trial court's ruling—law that we clarify today—we are not convinced either party knew what remedy to request from the trial court. In other words, it is unlikely that either the Commonwealth or Brewer would have considered trifurcation as a way of properly managing the prior-conviction evidence.

**3.** 424 S.W.3d 921, 925 n.1 (Ky. 2014).

**4.** The victim was the same for all mentioned crimes.

**5.** *Walker v. Commonwealth*, 288 S.W.3d 729, 739 (Ky. 2009).

**6.** *See, e.g., Commonwealth v. McBride*, 281 S.W.3d 799, 803 (Ky. 2009) ("The construc-

If a person commits a third or subsequent offense of assault in the fourth degree under KRS 508.030 within five (5) years, and the relationship between the perpetrator and the victim in each of the offenses meets the definition of family member or member of an unmarried couple, as defined in KRS 403.270, then the person may be convicted of a Class D felony. If the Commonwealth desires to utilize the provisions of this section, the Commonwealth shall indict the defendant and the case shall be tried in the Circuit Court as a felony case. The jury, or judge if the trial is without a jury, may decline to assess a felony penalty in a case under this section and may convict the defendant of a misdemeanor. The victim in the second or subsequent offense is not required to be the same person who was assaulted in the prior offenses in order for the provisions of this section to apply.

The error by the trial court and Court of Appeals can be traced directly to the interpretation of this statute in *Lisle*.[7] In *Lisle*, the Court of Appeals was faced with, as framed by that court, "whether [KRS 532.080] is a mere 'enhancement' statute for which the prior convictions involving spouses or family members are just 'sentencing factors' or if they are 'elements'

which must be proven beyond a reasonable doubt by the Commonwealth."[8] In the end, the Court of Appeals concluded that beyond-a-reasonable-doubt is the proper standard of proof for the Commonwealth when seeking a conviction under KRS 508.032. This result was essentially mandated by the United States Supreme Court's holding in *Apprendi v. New Jersey*[9] because KRS 508.032 requires findings of fact that "increase the prescribed range of penalties to which a criminal defendant is exposed."[10] Burden of proof, and nothing else, is the thrust of *Lisle*. What *Lisle* did not deal with—explicitly at least—is the question presented in the instant case: what is the proper procedure when the Commonwealth seeks a conviction under KRS 508.032?

The confusion created by *Lisle* stems from a false dichotomy the Court of Appeals erected between "a mere 'enhancement' statute" and "elements." An "enhancement" statute may have "elements" that must be proved beyond a reasonable doubt—this has been affirmed repeatedly with regard to our Persistent Felony Offender (PFO) statute.[11] Unfortunately, the *Lisle* Court's use of *element* is problematic as evidenced by the instant case. It seems most courts have understood *Lisle* to say that KRS 508.032 created a new, separate crime. So both the trial court

---

tion and application of statutes is a matter of law. Therefore, this Court reviews statutes de novo without deference to the interpretations adopted by lower courts.") (italics omitted).

7. 290 S.W.3d 675.

8. *Id.* at 678.

9. 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000).

10. *Id.* at 490, 120 S.Ct. 2348 (quoting *Jones v. United States*, 526 U.S. 227, 252–53, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999)).

11. *See* KRS 532.080; *Morrow v. Commonwealth*, 77 S.W.3d 558, 560 (Ky. 2002) ("Within the Kentucky Penal Code, the General Assembly has established *sentencing enhancement procedures* for persistent felony offenders which authorize judges and juries to punish more severely those individuals who continue to commit felony crimes.") (emphasis added); *Moore v. Commonwealth*, 462 S.W.3d 378, 385 (Ky. 2015) (quoting *Martin v. Commonwealth*, 13 S.W.3d 232, 235 (Ky. 1999)) ("Indeed, we emphasized in *Martin*, that '[t]he Commonwealth still has the burden of proof as to every element of the PFO status beyond a reasonable doubt.' ").

and the Court of Appeals read *element* to mean that not only was the Commonwealth allowed to introduce prior-conviction evidence in its case-in-chief, it was *required.* Accordingly, the Commonwealth argues *Lisle* is dispositive. But *Lisle* is not applicable or even helpful to answer the question Brewer now poses. We all can agree that the Commonwealth is required to prove the elements of KRS 508.032 beyond a reasonable doubt before a jury may find guilt, but that does not mean KRS 508.032 cannot be an enhancement statute. Simply put, it can be and it is.

To begin with, the plain text of the statute alludes to enhancement rather than a freestanding crime. KRS 508.032 states that *"[i]f the Commonwealth desires to utilize the provisions of this section,* the Commonwealth shall indict the defendant. . . ."[12] This is not typical language creating a crime. In the instances where the General Assembly desires actually to *create* a crime, it says, for example, "[a] person is guilty of . . . when";[13] the General Assembly does not, on the other hand, say, "If the Commonwealth desires to utilize the provisions of this section, it shall then indict the defendant for murder. . . ."

The legislative history of KRS 508.032 likewise suggests its enhancement purpose. The 1996 version of the statute read:

If an individual is found guilty or pleads guilty to a third or subsequent offense of assault in the fourth degree pursuant to KRS 508.030 within five (5) years, and the relationship between the perpetrator and the victim in each of the offenses meets the definition of family member or member of an unmarried couple, as defined in KRS 403.720, the *penalty shall be enhanced by one (1) degree above the penalty otherwise provided for the offense.* The victim in the second or subsequent offense is not required to be the same person who was assaulted in the prior offense in order for the provisions of this section to apply.[14]

The most significant problem with the original version was the jurisdictional chaos it created. That is, in what court—district or circuit—would such an enhanced penalty be imposed? Or, more broadly, in what court would such a defendant be prosecuted? A district court has no authority to impose a felony sentence, and a circuit court has no jurisdiction to handle a misdemeanor case unless joined with a felony. Our research indicates this Court was not asked to resolve any jurisdictional issues with the 1996 version of KRS 508.032, but we are not unfamiliar with efforts to resolve similarly confounding statutes.[15] The General Assembly's 2000 amendment of KRS 508.032, presumably to resolve the lurking jurisdictional concerns,[16] did not bring sufficient clarity to the statute nor did it alter its original enhancement purpose.[17]

---

12. Emphasis added.

13. *E.g.,* KRS 508.010–.030; KRS 507.020.

14. 1996 Kentucky Laws Ch. 345 (H.B. 310) (emphasis added).

15. *See, e.g., Mills v. Dep't of Corr. Offender Info. Serv.,* 438 S.W.3d 328 (Ky. 2014) (dealing with the firearm-enhancement statute, KRS 218A.992); *Jackson v. Commonwealth,* 363 S.W.3d 11 (Ky. 2012) (dealing, likewise, with KRS 218A.992).

16. The General Assembly added the following language targeted at jurisdiction: "If the Commonwealth desires to utilize the provisions of this section, the Commonwealth shall indict the defendant and the case shall be tried in the Circuit Court as a felony case." KRS 508.032(1).

17. It is worth mentioning that both commonsense and the policy of the General Assembly, as can be gleaned from other penal statutes, also serve as indicia of KRS 508.032's enhancement goal. Commonsense dictates that

Finally, the *Lisle* court did not truly act as if KRS 508.032 was a separate crime, any language in its opinion to the contrary notwithstanding. Lisle's conviction as a repeat domestic assaulter under KRS 508.032 was vacated by the opinion, *but* the Court of Appeals affirmed Lisle's conviction for fourth-degree assault and remanded the case for sentencing. This would only have been possible if the jury found Lisle guilty of fourth-degree assault separately from finding him guilty of repeatedly assaulting a family member. This is not incongruent with the approach we outline today; in fact, it is *consistent* with the enhancement purpose of KRS 508.032. We note this simply to point out that upon careful study, *Lisle* is not only unable to support the weight it was given by the lower courts in the instant case, but it actually supports a contrary position.

In any event, unlike in *Lisle,* our focus today is not on whether the Commonwealth *should* use evidence of prior convictions nor on whether it can—those questions have been decided. Rather, we are concerned with *how* those prior convictions should be used. In proceeding with this analysis, we try to give effect to the General Assembly's intent and offer both the bench and bar guidance.

 The short answer for how prior-conviction evidence—and, for that matter, evidence relating to the previous assault-victim's identity—should be admitted is in a trifurcated trial. First, the defendant must be found guilty of fourth-degree assault under KRS 508.030; second, the de-

fendant must be found guilty of fourth-degree assault, third or subsequent offense within five years under KRS 508.032; and third, if the jury finds him guilty, the defendant must be sentenced under the now well-understood rubric of felony sentencing.

Two primary reasons mandate trifurcation: (1) the plain language of KRS 508.032 requires a fourth-degree assault conviction *before* becoming applicable; (2) statutes and our case law dealing with truth-in-sentencing require felony sentencing to be bifurcated from the guilt phase. In conjunction with the latter reason, we find KRS 508.032 attempts improperly to delegate legislative authority to the judiciary.

 When interpreting statutes, our utmost duty is to "effectuate the intent of the legislature."[18] That intent is perhaps no better expressed than through the actual text of the statute, so we look first to the words chosen by the legislature—if they are clear, they are decisive.[19] In reviewing the text, we give words their plain, ordinary meaning. The text of KRS 508.032 is imprecisely drafted but generally unambiguous. The statute begins: "If a person *commits* a third or subsequent offense of assault in the fourth degree under KRS 532.080, . . . ." This sentence defines the scope of the statute. Put another way, this sentence puts forth a condition precedent for the statute to apply.

Black's Law Dictionary defines *commit*

---

a repeat offender, *i.e.,* an individual who batters a family member three times in five years, should be punished greater than someone who is a first-time offender. Indeed, that individual is inflicting a greater injury on the public. The General Assembly agrees with this view as evidenced by the statutorily enhanced penalties for persistent felons. *See* KRS 532.080.

18. *Commonwealth v. Plowman,* 86 S.W.3d 47, 49 (Ky. 2002).

19. *See, e.g.,* *Stephenson v. Woodward,* 182 S.W.3d 162, 170 (Ky. 2005).

as "[t]o perpetrate (a crime)." [20] Because a person charged is presumed innocent until proven guilty, KRS 508.032 cannot simply mean that a "person commits" fourth-degree assault with merely an indictment. While it may be clear that a crime has been perpetrated at the indictment stage, it is entirely unclear the defendant was responsible for that crime [21]—indeed, we must presume that he was *not* the perpetrator. Before KRS 508.032 can apply to a defendant, the defendant must be convicted of fourth-degree assault under KRS 508.030. [22] So this constitutes the first phase.

We pause here to highlight the evidentiary and sentencing boundaries of this first phase. In the instant case, the Commonwealth sought to admit prior-conviction evidence essentially during the fourth-degree-assault guilt phase. [23] It nearly goes without saying, but we emphasize the point that this evidence is inadmissible during the first phase. Offered at this juncture in the proceedings, evidence of prior convictions is both highly prejudicial and wholly irrelevant. The exclusion of this evidence is the explicit purpose of KRE 404(b) because such evidence tends to convict a defendant based on character rather than conduct. [24] After all, "[a]n accused is entitled to be tried for one offense at a time, and evidence must be confined to that offense." [25] To be sure, prior convictions are an element under KRS 508.032; but no such proof is required or warranted under KRS 508.030. [26] It was an abuse of discretion for the trial court to allow such evidence in the guilt phase.

If the jury—or judge, as the case may be—finds the defendant guilty during the first phase, a sentence should be recommended per our criminal rules and case law. When dealing with misdemeanor cases, RCr 9.84(1) [27] "plainly imposes a

---

20. BLACK'S LAW DICTIONARY (10th ed. 2014).

21. Of course, it may be *probable* that the defendant is responsible for the crime as the indictment is an indicator of probable cause to believe the defendant was responsible.

22. This reading of KRS 508.032(1) was mentioned with approval in *Galloway* in a footnote. *Galloway*, 424 S.W.3d at 925 n. 1 ("Trifurcating the trial was a reasonable approach[] because the jury had to first determine whether Galloway was guilty of fourth-degree assault before it could determine whether he was guilty of fourth-degree assault, third offense.").

23. We say this because there was no indication by either party or the trial court that simple fourth-degree assault was going to be separated from the repeat-domestic-violence enhancement outlined in KRS 508.032. As it were, the Commonwealth intended to prove both the fourth-degree assault (constituting the third or greater offense for purposes of KRS 508.032) and any past convictions simultaneously.

24. *Dedic v. Commonwealth*, 920 S.W.2d 878, 879 (Ky. 1996) ("It is a fundamental principle that the introduction of a previous conviction during the process of determining guilt or innocence is prejudicial.") (citing *Jones v. Commonwealth*, 303 Ky. 666, 198 S.W.2d 969 (1947)).

25. *O'Bryan v. Commonwealth*, 634 S.W.2d 153, 156 (Ky. 1982).

26. This approach has been adopted in this Commonwealth's DUI statutes, which are loosely analogous. In *Commonwealth v. Ramsey*, 920 S.W.2d 526 (Ky. 1996), this Court held that "previous DUI convictions are not admissible during the guilt phase of a trial when offered to enhance the penalty." *Id.* at 529. The same can be said here: the prior assault convictions are offered to enhance the offense from a misdemeanor to a felony. They are not admissible during the guilt phase.

27. RCr 9.84(1), save exceptions irrelevant to the present case, reads: "When the jury returns a verdict of guilty it shall fix the degree of the offense and the penalty. . . ."

requirement that in a verdict of guilty the jury should ... fix[ ] a specific penalty...."[28] But unlike felony sentencing, no "evidence of [a defendant's] prior criminal record or character [is] ... admissible"[29] because it is not relevant—as has oft been repeated, misdemeanor punishment is "graded by the enormity of the offense"[30] and "should be commensurate with the wrong done ... to the public."[31]

Setting a sentence for the instant misdemeanor, *i.e.*, the fourth-degree assault charge triggering KRS 508.032, is consistent with our case law vacating convictions under KRS 508.032, yet upholding the defendant's conviction and sentence under KRS 508.030.[32] Likewise, commonsense dictates that if KRS 508.032 is designed to enhance, there must be *something* to enhance.[33]

 The second phase is the phase in which the Commonwealth attempts to prove the elements of KRS 508.032. The admission of prior convictions and the evidence of prior bad acts associated with those convictions is appropriate in this phase. After all, the Commonwealth is required by statute to prove the defendant has previously committed fourth-degree assault in the domestic context. But the Commonwealth may only introduce evidence relating to prior fourth-degree-assault convictions where the victim was a family member or member of an unmarried couple (the defendant being the other member of that couple).

So why may a third phase be required? The simple answer is that felony and misdemeanor sentencing are fundamentally different processes. As is usually the case when dealing with statutory language, the more precise answer is more involved.

Felony sentencing operates on the other end of the spectrum from misdemeanor sentencing. With the enactment of KRS 532.055 and 532.080, as well as our decision in *Commonwealth v. Reneer*,[34] a defendant's criminal record and prior convictions *are* admissible during felony sentencing. In addition, felony sentencing is

28. *Holcomb v. Commonwealth*, 501 S.W.2d 264, 264 (Ky. 1973).

29. *Newton v. Commonwealth*, 760 S.W.2d 100, 101 (Ky.App. 1988).

30. *Id.* at 102 (quoting *Cornelison v. Commonwealth*, 84 Ky. 583, 2 S.W. 235, 238 (1886)).

31. *Id.*

32. *See, e.g., Galloway*, 424 S.W.3d at 927; *Lisle*, 290 S.W.3d at 680 (noting the jury was instructed properly for the misdemeanor, indicating, despite the court's remand for sentencing, the jury was asked to contemplate punishment for the assault).

33. Admittedly, our case law runs somewhat contrary to this conclusion because prosecution under KRS 508.032 is considered a "felony case" by statute. In *Commonwealth v. Philpott*, 75 S.W.3d 209 (Ky. 2002), we made

clear that penalty ranges could not be provided to the jury for any sentence, whether primary or lesser-included, until after the jury had made clear its verdict was for either felony or misdemeanor. *See id.* at 213. We discuss *Philpott* below as well; but for purposes of this first phase, we note that *Philpott* and its progeny deal with misdemeanor offenses that are lesser-included offenses of charged felony offenses—that is not the situation presented here. Here, we are dealing with an enhancement, something very different from a lesser-included offense, both in function and form. So we are not constrained completely by that case law. But, as mentioned below, we do find it applicable in the enhancement phase because the jury is presented with the possibility of convicting the defendant of a felony or misdemeanor simultaneously. That situation is much more akin to *Philpott*'s holding regarding lesser-included offenses.

34. 734 S.W.2d 794 (Ky. 1987).

required by statute to be bifurcated.[35] So if the jury convicts the defendant under KRS 508.032 in the second phase, a third phase is then required to engage in the truth-in-sentencing process that has now become routine in felony sentencing. However, truth-in-sentencing does not apply to misdemeanor convictions.

 Curiously, KRS 508.032 permits the jury to "decline to assess a felony penalty" and, instead, "convict the defendant of a misdemeanor." As we endeavor to give weight to the intent of the General Assembly when interpreting statutes, this language in KRS 508.032 is extremely problematic.

We are baffled as to the proper method of instructing the jury in line with this provision. As we discussed above, when the jury renders a guilty verdict for a misdemeanor, the jury is required to fix a punishment simultaneously. But if we were to apply this rule while reading the statute literally, we would reach a result contrary to our case law. In *Commonwealth v. Philpott*, we held that "in the trial of a 'felony case,' *i.e.*, any trial in which a jury could return a verdict of guilty of a felony offense, the jury shall not be instructed on the penalty ranges of *any* offense, whether the primary or a lesser[-]included offense."[36]

 The jury, therefore, could not be instructed on the misdemeanor penalty during the second phase, *i.e.*, the phase allowing evidence of prior fourth-degree assault convictions for a possible felony-enhancement verdict. The mere possibility of a misdemeanor conviction does not transform a felony case into a misdemeanor case such that misdemeanor-sentencing procedures apply.[37] Instead, sentencing is dependent on the outcome of the jury's verdict. Only upon the return of a verdict "convicting the defendant of the misdemeanor offense and thereby acquitting him/her of the felony offense" does a case become a misdemeanor case. But how would we know the jury had convicted a defendant of a felony or misdemeanor?

The troublesome language of KRS 508.032, unlike a lesser-included offense, presumably requires the jury to decide between a felony and a misdemeanor for the *same* conduct; that is, no difference in requisite proof. So jury instructions could not be phrased using the customary guilty or not-guilty choice. Instead, taken literally, the statute seems to direct the jury to find the defendant guilty and then decide how to classify the crime of which the defendant is guilty. Simply put, the General Assembly has left to a jury's discretion whether a defendant, found beyond a reasonable doubt to be guilty of persistently committing fourth-degree assault in a domestic setting, should be guilty of a felony offense or a misdemeanor offense.[38]

Aside from operating contrary to our criminal procedural rules and case law, this process exceeds the factfinding function of a petit jury. Decisions of crime classifications are appropriate policy decisions for a legislative chamber, not the jury room. After all, the "legislature,

---

35. *See* KRS 532.055.

36. *Philpott*, 75 S.W.3d at 213.

37. *Id.* at 212 ("Instructing the jury on a lesser[-]included misdemeanor offense does not transform a felony case into a misdemeanor case.").

38. Of note, this decision—whether an offense is a felony or a misdemeanor—carries with it enormous ramifications. The state is responsible for housing, *i.e.*, paying for, the incarceration of felons; but counties are responsible for housing misdemeanants. And, of course, convicted-felon status terminates an individual's right to vote or own a firearm.

rather than the judiciary, designates the elements of criminal conduct and the penalty for crimes." [39] More specifically, "the discretion to define the level of harm and the appropriate punishment is within the purview of the Legislature, not this Court." [40] With this provision in KRS 508.032, the General Assembly essentially delegated its authority to a petit jury. Concerns regarding separation of powers—a concept strongly held and strictly adhered to in the Commonwealth [41]—are evident.

 The nondelegation doctrine recognizes that the General Assembly must exercise its legislative authority rather than delegating it to another branch or agency. Practicality recognizes that the General Assembly cannot accomplish all its duties without help. Similar to the federal "intelligible principle" rule, [42] the General Assembly may delegate its authority in those limited circumstances where it "lay[s] down policies and establish[es] standards" [43] to which the body directed to act must conform. Here, those policies or standards are completely absent. The General Assembly does not even direct the judiciary *what* misdemeanor a defendant could be convicted of under KRS 508.032, deciding instead simply to say a defendant may be convicted of *a* misdemeanor. So we are forced to speculate as to what punishment would be appropriate; or, put another way, the General Assembly has delegated to the judiciary the task of defining the punishment for a crime. [44]

 This is an inappropriate delegation of authority. The provision is unworkable, both practically and constitutionally. That said, in giving effect to the intent of the General Assembly, we also operate under the presumption that the General Assembly intended to enact a constitutional statute. Indeed, "[i]n Kentucky, a statute carries with it the presumption of constitutionality; therefore, when we consider it, we are obligated to give it, if possible, an interpretation which upholds its constitutional validity." [45] We believe such an interpretation exists, so we

**39.** *Wilfong v. Commonwealth*, 175 S.W.3d 84, 92 (Ky.App. 2004); *see also Arroyo v. United States*, 359 U.S. 419, 424, 79 S.Ct. 864, 3 L.Ed.2d 915 (1959) ("It is the legislature, not the Court, which is to define a crime, and ordain its punishment.").

**40.** *Cornelison v. Commonwealth*, 52 S.W.3d 570, 573 (Ky. 2001).

**41.** *See Sibert v. Garrett*, 197 Ky. 17, 246 S.W. 455, 457 (1922) ("Perhaps no state forming a part of the national government of the United States has a Constitution whose language more emphatically separates and perpetuates what might be termed the American tripod form of government than does our Constitution....."); *Diemer v. Commonwealth*, 786 S.W.2d 861, 864 (Ky. 1990) ("Kentucky is a strict adherent to the separation of powers doctrine.").

**42.** *See J.W. Hampton, Jr., & Co. v. United States*, 276 U.S. 394, 409, 48 S.Ct. 348, 72 L.Ed. 624 (1928).

**43.** *Bd. of Trustees of Judicial Form Retirement System v. Attorney Gen. of Com.*, 132 S.W.3d 770, 783 (Ky. 2003) (quoting *Bloemer v. Turner*, 281 Ky. 832, 137 S.W.2d 387, 391 (1939)).

**44.** At bottom, the discretion of the judiciary is largely unfettered because of KRS 508.032's quirky language. *See TECO Mechanical Contractor, Inc. v. Commonwealth of Kentucky, Environmental and Public Protection Cabinet*, 366 S.W.3d 386, 398 (Ky. 2012) ("With regard to delegations of legislative authority, we also consider whether the law prescribes sufficient standards to prevent the agency from exercising unfettered discretion.").

**45.** *Caneyville Volunteer Fire Dep't v. Green's Motorcycle Salvage, Inc.*, 286 S.W.3d 790, 806 (Ky. 2009).

decline to strike down the statute or eliminate the provision.[46]

Reading KRS 508.032 to create a felony-assault enhancement allows us to make sense of this confounding language. If the jury finds the defendant guilty under KRS 508.032, he is guilty of a Class D felony and should be sentenced accordingly. If, on the other hand, the jury finds the defendant not guilty, the jury has "decline[d] to assess a felony penalty" and has, instead, "convict[ed] the defendant of a misdemeanor;" i.e., fourth-degree assault under KRS 508.030. This is virtually the only way we can effectuate the intent of the General Assembly and stay true to our case law and procedural requirements. From what we can gather, this reading seems consistent with the General Assembly's intent to punish repeat domestic abusers more severely.

We conclude with a technical, but no less significant, point. Admittedly, as we have previously acknowledged, defining permissible evidence for purposes of sentencing-enhancement proceedings has been somewhat of an elusive goal for this Court.[47] We remain steadfast in our support for the general principle that we should be diligent in ensuring detailed facts of prior convictions are kept from the jury. But in this context—unlike the PFO context—we recognize some evidence of a victim's identity is necessary for the Commonwealth to prove its case under KRS 508.032.

Of course, "[t]he trial court should avoid identifiers, such as naming of victims, which might trigger memories of jurors who may—especially in rural areas—have prior knowledge about the crimes."[48] This statement makes clear sense in the context of PFO proceedings, but we find the concept inapplicable to enhancement proceedings under KRS 508.032. The reason for this is rather simple: KRS 508.032 requires the Commonwealth to prove more than the mere fact of recidivism, i.e., that a defendant committed prior offenses. To be specific, KRS 508.032 requires proof that "the relationship between the perpetrator and the victim in each of the offenses meets the definition of family member or member of an unmarried couple." So, as we concluded in *Galloway* and the Court of Appeals concluded in *Lisle*, proof of the victim's identity and his or her relationship with the defendant is required.

We reinforce *Galloway*'s straightforward conclusion with eyes wide open to the potential policy benefits associated with affording victims some degree of protection or comfort by prohibiting the disclosure of their identity during KRS 508.032

---

**46.** KRS 508.032 does not contain a severability clause, but we could sever the provision regardless. *See Buckley v. Valeo*, 424 U.S. 1, 108–09, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976). And the General Assembly has enacted a statute regarding severability. KRS 446.090:

> It shall be considered that it is the intent of the General Assembly, in enacting any statute, that if any part of the statute be held unconstitutional the remaining parts shall remain in force, unless the statute provides otherwise, or unless the remaining parts are so essentially and inseparably connected with and dependent upon the unconstitutional part that it is apparent that

the General Assembly would not have enacted the remaining parts without the unconstitutional part, or unless the remaining parts, standing alone, are incomplete and incapable of being executed in accordance with the intent of the General Assembly.

**47.** *Mullikan v. Commonwealth*, 341 S.W.3d 99, 108 (Ky. 2011) ("This Court has been struggling for the last fifteen years, through a series of cases, to define permissible evidence which may be introduced describing the 'nature of prior offenses.'").

**48.** *Id.* at 109.

proceedings. Laudable as that policy may be, it presents evidentiary complications and operates as somewhat of an anomaly in our criminal justice system. With regard to the former, it becomes difficult and complicated for not only the Commonwealth, but also the defendant, to present their case if the victim's identity is off limits. As much as we believe that the relationship is the statute's material element, a dose of reality forces us to concede that the relationship is closely linked with the victim's identity—so much so that proving or disproving that relationship may very well *depend* on the victim's identity. As for the latter, the testimony of the victim (which the Commonwealth planned to introduce here) is not only essentially universally viewed as admissible evidence, it is often the *key* piece of evidence. Granted, the subject matter of KRS 508.032 proceedings may be intensely private, perhaps humiliating, or even terrifying for a victim, but no more so than other proceedings involving crimes of a personal nature such as rape or sexual abuse. The comfort and protection of a victim is something we earnestly protect, but we also must ensure that the jury is adequately informed to reach a conclusion free of any reasonable doubt.

No doubt various mechanisms exist to prove properly the defendant's relationship with the victim. And, again, we cannot disagree that proof of the *relationship* rather than the *identity* is what the statute requires. Even so, we must acknowledge the practical difficulty for the Commonwealth and the criminal defendant if the fact of the victim's identity is shielded from the jury.

 There is little need to provide an exhaustive list of options. However, we do well to note that one option is constitutionally foreclosed. Under *Apprendi*, a judge may not find that the victim was a family member or member of an unmarried couple. Why? Because whether the victim of a defendant's prior fourth-degree-assault convictions was related to the defendant as either a family member or member of an unmarried couple is a "fact that increases the penalty . . . beyond the prescribed statutory maximum. . . ."[49] That finding, then, "must be submitted to a jury, and proved beyond a reasonable doubt"[50] under the Fourteenth Amendment. Unlike a prior conviction, which we discuss below, the fact of the defendant-victim relationship has not previously been submitted to a jury. For a fourth-degree-assault conviction, notably, there is no requirement that the Commonwealth prove the defendant-victim relationship, much less that the jury find anything regarding it beyond a reasonable doubt. The jury sitting in the KRS 508.032 proceedings is the first jury to review the defendant-victim relationship.[51]

 Putting aside issues associated with the victim's identity, we turn to the other proof required by the Commonwealth under KRS 508.032—specifically, evidence relating to a defendant's prior fourth-degree-assault convictions. We have repeatedly kept narrow the permissible scope of evidence dealing with prior-bad-acts evidence for purposes of sentence enhancement. "[E]vidence of prior convictions is limited to conveying to the jury the

---

**49.** *Apprendi*, 530 U.S. at 490, 120 S.Ct. 2348.

**50.** *Id.*

**51.** A defendant could, we believe, waive his constitutional right to trial by jury on his relationship with prior victims and agree to a

judge acting as the factfinder. Of course, a finding that the defendant engaged in a knowing, voluntary, and intelligent waiver would be required. *See, e.g., Jackson v. Commonwealth*, 113 S.W.3d 128, 131 (Ky. 2003).

elements of the crimes previously committed."[52] Here, KRS 508.032 is much more analogous to our PFO statute. And like PFO proceedings, the Commonwealth should avoid retrying past convictions by providing detailed facts supporting the conviction. The facts underlying the past convictions are not what the jury is asked to weigh under KRS 508.032. The jury, instead, is simply asked to determine beyond a reasonable doubt that the convictions happened and they were for fourth-degree assault. The Commonwealth would do well simply to present the nature of the offenses and any proof needed for the jury to find the defendant's prior convictions were within the statutorily prescribed time period and indeed for fourth-degree assault. In this area of KRS 508.032, the Commonwealth *is* simply proving the defendant's recidivism. There is no need to retry him for those acts for which he has already been convicted.[53]

■ In summary, the statute itself along with our misdemeanor-sentencing case law and nondelegation case law requires trifurcation when the Commonwealth seeks a conviction under KRS 508.032. We hold the proper method for trial under KRS 508.032 to be:

(1) Fourth-degree assault guilt phase where no prior-conviction evidence is admissible. If the jury finds guilt, then it fixes punishment for the offense.

(2) Upon a finding of guilt in the first phase, the trial moves to the second phase—the KRS 508.032 guilt phase—where prior-conviction evidence is admissible, but only prior convictions of fourth-degree assault involving a family member or member of an unmarried couple. If the jury finds the defendant not guilty in this phase, then judgment is entered imposing the misdemeanor sentence fixed by the jury in the first phase.

(3) Upon a finding of guilt in the second phase, the trial moves to the third phase, the enhanced sentencing for Fourth-Degree Assault, Third or Subsequent Offense within 5 Years. The third phase is conducted in accordance with KRS 532.055.

Before concluding, we think it useful to offer a model instruction to be used when dealing with KRS 508.032.

*First phase*:

You will find the Defendant guilty of Fourth-Degree Assault under this Instruction if, and only if, you believe from the evidence beyond a reasonable doubt all of the following:

A. That in this county on or about _____ (date) and within 12 months before the [finding of the Indictment herein] [issuance of the warrant for his arrest], he intentionally caused physical injury to _____ (victim) by _____ (method); [AND]

---

**52.** *Mullikan,* 341 S.W.3d at 109.

**53.** *Apprendi* does not apply to this particular finding—that is to say, a judge may find that the defendant has, within five years, twice been convicted of fourth-degree assault. This is because a defendant has previously enjoyed the constitutional protections afforded him, *e.g.,* right to trial by jury, and there is no requirement to supply a subsequent layer of protection. The fact of a prior conviction does not need to be submitted to a jury.

*Apprendi,* 530 U.S. at 488–90, 120 S.Ct. 2348; *Jones v. United States,* 526 U.S. 227, 243 n.6, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999) ("[U]nder the Due Process Clause of the Fifth Amendment and the notice and jury trial guarantees of the Sixth Amendment, any fact *(other than prior conviction)* that increases the maximum penalty for a crime must be charged in an indictment, submitted to a jury, and proven beyond a reasonable doubt.") (emphasis added).

B. [That in so doing, he was not privileged to act in self-protection. (Or insert other appropriate justification or defense.) ]

[If you find the Defendant guilty under this Instruction, you shall fix his punishment at confinement in the county jail for a period not to exceed 12 months, at a fine not to exceed $500.00, or at both confinement and fine, in your discretion.]

*Second phase*:

You will find the Defendant guilty of Fourth–Degree Assault, Third or Subsequent Offense within 5 Years if, and only if, you believe from the evidence beyond a reasonable doubt all of the following:

A. That prior to (date of present offense), the Defendant was convicted of fourth-degree assault by final Judgment of the _____ (ID court–2) on _____ (date–2); AND that prior to committing the fourth-degree assault for which he was convicted on _____ (date–2), he was convicted of fourth-degree assault by final Judgment of the _____ (court–3) on _____ (date–3);

B. That the victim of the present offense, the victim of the conviction on _____ (date–2), and the victim of the conviction on _____ (date–3) were "family member[s]" or "member[s] of an unmarried couple" as those terms are defined for you under Instruction No. _____;

AND

C. That the present offense, the conviction on _____ (date–2), and the conviction on _____ (date–3) occurred within five years from _____ (date of present offense).

*Third phase*:

You have found the Defendant guilty of Fourth–Degree Assault, Third or Subsequent Offense within 5 Years. In lieu of the punishment you have fixed for the Defendant under Instruction No. _____, you shall fix his punishment under this Instruction for Fourth–Degree Assault, Third or Subsequent Offense within 5 Years under Count _____ of the Indictment at confinement in the penitentiary for not less than one year, nor more than five years, in your discretion.

### III. CONCLUSION.

In the end, KRS 508.032 is not a separate *crime*; rather, it is an enhancement required by constitutional principles to be proven beyond a reasonable doubt. Like PFO proceedings, the Commonwealth should indict under *both* KRS 508.030 and 508.032. Trifurcation is the appropriate trial mechanism to prevent the factfinder's judgment from being polluted with prejudicial evidence our evidentiary rules have long disfavored. We reverse the Court of Appeals and the judgment of the trial court and remand the case to the trial court for proceedings not inconsistent with this Opinion.

All sitting. All concur.