RENDERED: MARCH 15, 2024; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2023-CA-1005-ME

GORDON SMITH                                                    APPELLANT

v.
APPEAL FROM JEFFERSON FAMILY COURT
HONORABLE LAURA P. RUSSELL, JUDGE
ACTION NO. 23-D-502455-001

AIMEE SMITH                                                      APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  ACREE, CETRULO, AND TAYLOR, JUDGES.

CETRULO, JUDGE:  The Jefferson Family Court entered an emergency protective

order ("EPO") and domestic violence order ("DVO") against Appellant Gordon

Smith ("Gordon").  In both orders, the family court prohibited Gordon from

possessing, purchasing, or attempting to possess, purchase, or obtain a firearm

during the duration of the DVO.[1]  Gordon appeals the orders inasmuch as they

---

[1] Although Gordon cites Kentucky Revised Statute ("KRS") 403.740(1)(c) for such determination, the family court referenced federal law, *i.e.*, 18 United States Code ("U.S.C.") § 922(g)(8), which states that it is unlawful for a person "who is subject to a court order," like the

prohibited his ability to possess firearms,[2] claiming such prohibitions were unconstitutional pursuant to the Second and Fourteenth Amendments to the Constitution, in light of the ruling of the United States Supreme Court in *New York State Rifle & Pistol Association, Inc. v. Bruen*, 597 U.S. 1, 142 S. Ct. 2111, 213 L. Ed. 2d 387 (2022). Upon review, we find Gordon failed to properly preserve those challenges for appeal.

## I.   FACTUAL AND PROCEDURAL HISTORY

In July 2023, Appellee Aimée Smith ("Aimée") filed a petition for order of protection against Gordon. In the petition, Aimée explained that she had filed for divorce a couple of months earlier, after 25 years of marriage. In the divorce proceedings, the family court had entered a no contact order, which included Aimée's workplace. A few days before Aimée filed the petition for protection, Gordon showed up to her workplace as she was walking toward her bus stop. When she saw Gordon, she hurried back toward her work building, but Gordon blocked the entry to the building with his car. Eventually, Gordon drove away; however, when Aimée got back to the bus stop, she again saw his car and again ran to her workplace.

---

DVO here, "to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce."

[2] Gordon does not appeal the findings or conclusions of the orders.

The petition noted that she was "concerned for [her] safety because [her] husband had been controlling and abusive throughout [the] marriage." Additionally, there was a no contact order in place, and Gordon was not supposed to be at her workplace. The petition stated that Gordon was "monitoring [her] personal emails, [her] web browsing, and was preventing [her] from seeing [her] family before [she] left him." In July 2023, the family court entered an EPO restraining Gordon from contacting Aimée or being within 500 feet of her workplace or residence. The EPO ordered the "Sheriff [to] confiscate and retain any firearms in the possession of [Gordon] pending a hearing in this action."[3] Although the EPO stated that the parties could file a motion to amend, Gordon did not move to amend the EPO.

Two weeks later, the family court held the DVO hearing, and both parties were present with counsel.[4] There, the petition was read into the record and Aimée testified that she was concerned for her safety, that "physical abuse had occurred," and that Gordon was "very controlling." She detailed accounts in which Gordon punched her and squeezed her arms, causing bruises. Gordon denied those allegations, but admitted that he knew Aimée's passwords and

---

[3] The family court also entered a corresponding protective order to surrender the firearms.

[4] Additionally, Gordon called a friend to testify regarding his character. She testified that she had known the parties for 30 years, and she did not believe Gordon was violent or controlling.

accessed her accounts to keep track of her. He further testified that he had firearms, which he "hid in plain sight" because the house had been broken into in the past. He testified that he did not typically keep the firearms on him and was not armed on the day he confronted Aimée at her workplace.

Following the testimony, the family court noted that it found Gordon's behavior to be concerning because he knew Aimée's passwords and admitted to tracking her whereabouts. As such, the court concluded Gordon was not respecting boundaries. The court found Aimée's testimony to be credible and that there had been physical abuse and some control issues. The court emphasized that even after the no contact order was put into effect in the divorce case, Gordon continued to go to Aimée's workplace; therefore, the court was concerned about her safety.

The family court found that domestic violence had occurred; Gordon had stalked Aimée; and that domestic violence had occurred in the past and was likely to occur again. As such, the court entered a DVO against Gordon for three years. The court kept the EPO's no contact provisions in place and prohibited Gordon from possessing, purchasing, or attempting to possess, purchase, or obtain a firearm during the duration of the DVO. Gordon's counsel objected to the firearms restriction because Gordon had testified that he did not have a firearm when he went to Aimée's workplace, and he used the firearms only for home

protection. The family court stated that it was bound by federal law; therefore, the court kept the firearms restriction in the DVO. Gordon did not object to the use of the federal law, or contest its constitutionality, nor did he mention KRS 403.740(1)(c) or the EPO's firearms restriction. Likewise, Gordon did not invoke the Second Amendment or Fourteenth Amendment. Nevertheless, on August 30, 2023, Gordon appealed the DVO and EPO as they pertained to the constitutionality of the firearms restriction.

## II.   ANALYSIS

Gordon argues KRS 403.740(1)(c) – which allows a court to issue a DVO that "direct[s] or prohibit[s] any other actions that the court believes will be of assistance in eliminating further acts of domestic violence and abuse" – violates the Second and Fourteenth Amendments of the U.S. Constitution in light of *Bruen*. Therefore, Gordon claims, the firearms restriction in the DVO was unconstitutional. Additionally, Gordon argues the EPO violated the Second Amendment as well as the Due Process Clause of the Fourteenth Amendment. First, we must determine whether those challenges were properly preserved for appeal.

While Gordon concedes that he did not specifically cite *Bruen*, the Second Amendment, or the Fourteenth Amendment when he objected to the firearms restriction before the family court, he claims such omissions do not

-5-

prevent him from challenging the orders on those grounds. To make such contention, Gordon cites *Brewer v. Commonwealth*, 478 S.W.3d 363, 368 n.2 (Ky. 2015) and *Gasaway v. Commonwealth*, 671 S.W.3d 298, 313-14 (Ky. 2023). We find neither to be persuasive under these circumstances.

In *Brewer*, the defendant was tried for fourth-degree assault, and the matter was trifurcated. *Brewer*, 478 S.W.3d at 367. During an admissibility hearing regarding a prior conviction, the defendant argued "the Commonwealth could only admit the prior-conviction evidence in a separate sentencing phase." *Id.* at 368 n.2. Ultimately, the trial court permitted the evidence, and the defendant entered a conditional guilty plea in which he reserved "the right to assert on appeal that the trial court erred when it ruled that evidence of his prior assault convictions was admissible in the guilt phase of his trial." *Id.* at 367. The defendant then raised that reserved issue on appeal. *Id.*

Eventually, our Supreme Court granted discretionary review, dismissing the Commonwealth's preservation argument in a footnote. *Id.* at 368 n.2. The Commonwealth had argued the defendant "failed to preserve any claim regarding whether proceedings involving [the relevant statute] should be trifurcated, bifurcated, or otherwise" because the defendant did not specifically say "trifurcation" during the admissibility hearing. *Id.* at 368 n.2. However, the Court found that the defendant had

-6-

> properly objected to the Commonwealth's admission of prior-conviction evidence and argued the evidence at issue should only be admissible in a separate phase of the proceedings. So the trial court was fully apprised of the issue [regarding the various trial phases] and presented with an opportunity to rule on the merits.

*Id.*

As such, the important consideration was whether the trial court was "fully apprised of the issue and presented with an opportunity to rule on the merits." *See id.* In *Brewer*, the defendant's objection referenced the various stages of the proceeding and thereby apprised the trial court that the defendant was questioning the evidentiary ruling as it applied to those stages. *See id.* Therefore, the trial court was able to consider the evidentiary objection against the backdrop of the phase they were in compared to other phases. *See id.* The court was then able to rule on the merits of that issue. *Id.* Although the defendant had not said "trifurcation," he invoked the crux of trifurcation – the multiple stages of the proceeding – and the court ruled on that objection. *See id.*

Here, however, the family court was not given the opportunity to address any constitutional challenges. Gordon objected to the firearms restriction and explained that it was not necessary because he had not carried a firearm when he confronted Aimée at work. He further supported that claim by stating that he used his firearms only for home protection, so he almost never had it on his person. In response, the family court simply stated that federal law required it to

implement the restriction in the DVO. The discussion ended there. Gordon did not question the federal law authority nor state that such authority violated his rights. Likewise, Gordon did not move to amend the EPO and never challenged the constitutionality of the EPO during the DVO hearing.

Therefore, Gordon failed to adequately notify the court that he was challenging the constitutionality of the federal law or the EPO. Moreover, the family court was not apprised of any challenge to KRS 403.740(1)(c) because that statute was never invoked (explicitly or implicitly) during the proceedings. As such, the family court did not have the opportunity to rule on those issues, so the challenges were not preserved.

Likewise, in *Gasaway*, our Supreme Court emphasized that when determining preservation issues, "the fact that an issue was made known to the trial court is paramount: even if a trial court lacks authority to grant immediate relief, such as the power to overrule binding precedent[.]" *Gasaway*, 671 S.W.3d at 313. There, in relevant part, the defendant claimed to have preserved the evidentiary issues for appeal by objecting to three witnesses' testimonies. *Id.* at 311. For the first witness, "there was a relevant objection"; for the second, there was no objection; and for the third, the defendant objected, but the trial court remedied the objection through rephrasing "and no further relief was requested." *Id.* As such,

the Court determined that the defendant had properly preserved issues regarding only the first witness. *Id.*

Again, here, we do not find *Gasaway* to be persuasive. There, the Court determined that the "relevant objection" was properly preserved and could be reviewed on appeal. *Id.* However, the Court did not detail what the objection entailed or what made it relevant. While the background information on preservation rules in *Gasaway* provides helpful context regarding the importance of preservation,[5] it does not help us answer our question: was Gordon's objection sufficient to make known to the family court that he disagreed with the DVO and EPO firearms restrictions on constitutional grounds?

Although we do not find *Brewer* or *Gasaway* to be persuasive under these circumstances, we do find such guidance in *Bell v. Commonwealth*, 473 S.W.2d 820 (Ky. 1971). There, the defendant "made a general objection" but "the trial court did not rule on that objection" and proceeded with the trial. *Id.* at 821. The defendant did not object to that decision. *Id.* On appeal, the defendant alleged the trial court erred when it proceeded with the trial. *Id.* The Kentucky Supreme Court disagreed. *See id.* The Court explained that "the appellant has the duty to

---

[5] The Court explained that appellate jurisdiction "generally require[s] a party to properly preserve allegations of error at the trial court level[.]" *Id.* at 312 (citation omitted). The rationale for proper preservation "is that 'a court . . . may not be found to be in error where it has not been given an opportunity to (1) rule on the issue or (2) correct any alleged error.'" *Id.* (citation omitted).

make timely objections and if he wants to preserve his issues for review by this court the objections must be specific enough to indicate to the trial court and this court what it is he is objecting to." *Id.* at 821 (citing *Blanton v. Commonwealth*, 429 S.W.2d 407 (Ky. 1968) and Kentucky Rule of Criminal Procedure 9.22).

Further, the Court stated that "if an objection is made, the party making the objection must insist that the trial court rule on the objection, or else it is waived." *Id.* (citing *Simmons v. Commonwealth*, 269 S.W. 732 (Ky. 1925) and *Harris v. Commonwealth*, 342 S.W.2d 535 (Ky. 1961)). As such, the issue on appeal was "without merit because it was waived." *Id.*

Here, no party, nor the family court, so much as mentioned KRS 403.740(1)(c) in the proceedings below, and after the trial court referenced federal law – 18 U.S.C. § 922(g)(8) – Gordon did not object or question its constitutionality. Likewise, Gordon never moved to amend the EPO nor raised any issues with its entry at the DVO hearing. Gordon certainly did not challenge the constitutionality of any of the above before the family court. As such, the family court did not rule on any issues regarding the same. Indeed, Gordon could not have insisted that the family court rule on an issue that he never raised. *See id.* Like *Bell*, the family court proceeded with its findings and entered the DVO containing the firearms restriction. Gordon cannot now raise a constitutional challenge on those grounds because it was waived. *See id.*

-10-

## IV.   CONCLUSION

Gordon's constitutional challenges involving KRS 403.740(1)(c), 18 U.S.C. § 922(g)(8), and the firearms restriction in the EPO were not properly preserved for our review.  Therefore, the order of the Jefferson Circuit Court is AFFIRMED.

ALL CONCUR.

BRIEF FOR APPELLANT:

Thomas C. Lyons
Lexington, Kentucky

NO BRIEF FOR APPELLEE.

AMICUS BRIEF FOR THE
COMMONWEALTH OF
KENTUCKY:

Sarah N. Christensen
Assistant Attorney General
Frankfort, Kentucky